Walter N. **BRYSON**, Bessie T. Bryson, Johnnie Mae Presley and James Wilson, individually and for all others similarly situated

v.

William H. **BURSON**, individually and in his capacity as Director of the Georgia State Department of Family and Children Services.

Civ. A. No. 12950.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 23, 1969.

As Amended Dec. 29, 1969.

Peter E. Rindskopf, Elizabeth R. Rindskopf, William H. Traylor, Michael D. Padnos, Michael Terry and Elmer L. Nash, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for defendant.

### ORDER

ALBERT J. HENDERSON, Jr., District Judge.

By this order, the court makes permanent the preliminary injunction currently in force against the defendant Burson's application to the class of Georgia statutes barring persons otherwise eligible for public welfare assistance

from it because they have not been residents of the state for one year. Also before the court is the question whether each individual member of the class of plaintiffs in this suit is entitled to retroactive public assistance payments back to the date of the "incorrect action" *i. e.*, the date on which the application for public assistance of the individual member was denied unconstitutionally. The court has determined that, while the individual members of the class are not entitled to benefits to the date of the incorrect action, each is entitled to benefits retroactive to the date that this suit was filed, July 29, 1969.

On July 29, 1969, plaintiffs filed this suit, purporting to represent a class composed of " * * * all those eligible for welfare assistance under the Georgia Old Age Assistance Act, Aid to the Blind Act, and the Assistance for Disabled Act who have been residents of Georgia for less than one year". Plaintiffs seek to declare unconstitutional and to enjoin the enforcement of portions of the Old Age Assistance Act, Ga.Code Ann. § 99–603 (e), the Aid to the Blind Act, Ga.Code Ann. § 99–704(d), and the Assistance for Disabled Act, Ga.Code Ann. § 99–2002(e), all of which operate to deny welfare assistance to allegedly eligible persons solely because they have not resided within the State of Georgia for one full year prior to their application for welfare assistance.

On August 1, 1969, the plaintiffs presented to the court, and the court granted, an order temporarily restraining defendant Burson from the application of these acts, the court acting on the authority of the April 21, 1969, decision of the United States Supreme Court in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

On August 22, 1969, a hearing was held, at which arguments were presented on the application for preliminary injunction. At the conclusion of the hearing, the court verbally ordered that the temporary restraining order would be continued as a preliminary injunction. However, the court reserved the question whether the members of the class would be entitled to retroactive payments back to the date of denial of application for public assistance benefits. The parties were ordered to submit, and they have submitted, briefs on the question. The question of retroactive payments is now ripe for decision.

Also ready for decision are Burson's objections to plaintiffs' interrogatories. These interrogatories seek to identify persons whose applications for public assistance have been denied merely because the applicants had not resided within the state for the subject one-year period, in the period from September 1, 1968, to the present. The decision on the interrogatories will rise or fall according to the decision of the court on the main question.

In their brief, plaintiffs asserted not only the decision by the United States Supreme Court in the case of Shapiro v. Thompson, *supra*, but also asserted a regulation on the subject of residency, issued by the Department of Health, Education and Welfare (hereinafter referred to as HEW), issued on January 3, 1969. The regulation provided as follows, in pertinent part:

### RESIDENCE

SEC. 202.3 *Condition of plan approval; prohibition against exclusion of residence.*

A State plan for OAA, AFDC, AB, APTD, or AABD, * * * may not impose, as a condition of eligibility for such aid or assistance, any residence requirement which excludes any individual who resides in the State.

\* \* \* \* \* \*

(d) Any State which has imposed, as a condition of eligibility, a requirement which is inconsistent with the provisions of paragraph (a) * * * of this section must provide effective methods for giving notice of its present requirement to former or potential applicants for OAA, AFDC, AB, APTD, or AABD and to other interested persons. The methods which the

State agency proposes to meet this notice requirement must be submitted to and be approved by the Regional Commissioner, SRS, DHEW. In addition, where the records of the State agency permit identification of persons who applications have been denied at any time within the past year by reason of such an inconsistent requirement, the State agency must give prompt written notification to such persons concerning the change in that requirement. Such notification must be given within 90 days of publication of these regulations and must clearly explain the rights which certain persons have under these regulations.

34 Federal Register 8715, No. 105 (June 3, 1969). See 42 U.S.C. § 1302, for the authority of the Secretary of HEW to make and publish rules and regulations necessary to the administration of the Social Security Act. In summary, the plaintiffs assert that, because Burson's unconstitutional actions have forced plaintiffs and the members of their class to be deprived of public assistance payments to which they would have been entitled were it not for his acts, they and the members of their class should receive retroactive payments, each to the date of the act by which he was denied public assistance.

On the other hand, Burson points to the difficulty of establishing the date of application of each member of the class. He complains of the difficulty of establishing whether plaintiffs, some of which admittedly received payments from other states for a period of months after they moved to Georgia, were still receiving payments from such states after their application for relief was denied in Georgia. In response to the HEW regulation quoted above, he complains that the state's centrally located files will not reveal those persons who have been denied as applicants for public assistance, and a burdensome case by case examination of the files must be made in each of the 159 county Departments of Family and Children Services. Finally, Burson questions whether federal matching funds would be available to grant retroactive payments in the event that the court should award them. He complains that the Georgia General Assembly has authorized only "matching" funds. Appropriations Act, as amended (Ga.Laws 1968, pp. 146, 178–179).

Plaintiffs assert that the three judge district court in the *Shapiro* case ordered retroactive payments. However, as that case was not a class action, that court ordered retroactive payment only to the individual plaintiff. Thompson v. Shapiro, 270 F.Supp. 331, 338 (D.Conn. 1967). Similar relief was ordered in Machado v. Hackney, 299 F.Supp. 644, 646 (W.D.Tex.1969) (three judge court held unconstitutional Texas "substitute father" regulation). However, in Robinson v. Hackney, 307 F.Supp. 1249 (S.D. Tex. June 17, 1969), the district court, considering the Texas "maximum grant" regulation, totally denied retroactive benefits, asserting: "The financial burden placed on the State by such a decree would be enormous and we are not disposed to its imposition."

In Robinson v. Washington, 302 F. Supp. 842 (D.D.C.1968), and in Solman v. Shapiro, 300 F.Supp. 409 (D.Conn. 1969) (three judge district court), the district courts remanded the question of retroactive benefits to the District of Columbia and the state departments of welfare for consideration " * * * in light of this decision and the applicable regulations of the United States Department of Health, Education and Welfare and the Connecticut Department of Welfare", 300 F.Supp. at 416. The remand procedure was available through Connecticut's and the District of Columbia's "fair hearing" regulations. Although Georgia has a similar regulation, Burson asserts that the application for fair hearing must be made within 90 days of the alleged incorrect descision. Therefore, the plaintiffs are barred from a fair hearing, and the court is foreclosed from this method of dealing with the case.

■ In summary, the plaintiffs have not cited to the court a case, and the court knows of none, in which retroactive benefits to the date of the unconstitutional denial of public assistance to each individual has been allowed. Therefore, this court declines to order such relief. *See* Robinson v. Hackney, *supra.*

However, the court shall determine whether it can reward the members of the class for their diligence in some manner, under the reasoning in Machado v. Hackney, 299 F.Supp. at 646. This necessitates a close examination of the class.

■ In their complaint, plaintiffs define the class as " * * * all those eligible for welfare assistance under the Georgia Old Age Assistance Act, Aid to the Blind Act, and the Assistance for Disabled Act, who have been residents of Georgia for less than one full year". Complaint, paragraph III. However, this definition is too broad. The class at least must be limited to those persons *who have applied* for public assistance payments at one time or another, under one of the subject acts. In addition, the class must be limited as to the time within which the members of the class must have applied. In this connection, it must be remembered that at one time, 80% or more states imposed some type of residence requirement for public assistance. Compare Shapiro v. Thompson, 89 S.Ct. 1322, 22 L.Ed.2d at 618, n. 22 (Brennen J., speaking for the court), with 89 S.Ct. 1342, 22 L.Ed.2d at 640, n. 36 (Harlan, J., dissenting). Before the *Shapiro* decision, residence requirements were thought to be constitutional. Therefore, it would be an unfair burden, under these facts, to penalize the state for Burson's actions during that period.

Further, as to the period following April 21, 1969, the date of the *Shapiro* case, to the date of filing of this suit, July 29, 1969, the court denies retroactive relief. Again, the court is within its discretion in so doing. Robinson v. Hackney, *supra*; Machado v. Hackney,

*supra.* This would place a financial burden on the state while rewarding those who have not diligently protected their rights. Machado v. Hackney, 299 F.Supp. at 646.

Accordingly, in the interest of protecting the class which has sought relief, the court has determined to award retroactive benefits to July 29, 1969, the date of this suit, to the members of the class. However, in the interest of administrative simplicity, each otherwise eligible member of the class must apply for retroactive benefits within 60 days from the date of this order. Further, the state must give notice to those persons who have applied and have been accepted for public assistance, although they would otherwise have been rejected for failure to fulfill the residence requirement, since the date of this court's temporary restraining order, July 29, 1969.

However, Burson need not search county records in an attempt to give special notice to those who were denied public assistance during the one year period prior to July 29, 1969. At this writing, over four months have passed, during which the policy of the State Department of Family and Children Services has removed residential requirements as a prerequisite to public assistance. In this connection, Burson must publicize the eligibility of the class for retroactive payments in the same manner as other information concerning eligibility and availability of assistance to the general public is published.

While it is not necessary for the receipt of retroactive benefits that a member of the class must be presently eligible for or presently receiving public assistance, the court realizes the difficulty of establishing past eligibility, particularly when a need no longer exists. This problem is simplified by the fact that the need must have existed past July 29, 1969, in order for the member of the class to receive any benefit at all. Another difficulty of which the state has complained is the verification whether

an applicant had continued to receive payments from another state, after having moved to Georgia. However, considering the limited number of applicants for these retroactive benefits, it would seem that the normal application-taking process, together with a letter of inquiry to such other state, would eliminate the problem. Again, it is doubtful whether, even if another state had continued to make payments to a member of this class after he had moved to Georgia, the other state would have continued such payments after July 29, 1969.

In the event there are potential members of the class whose retroactive benefits are denied, and who dispute that decision, the Georgia State Department of Family and Children Services Manual of Public Welfare Administration, part 3, § X, providing for a fair hearing for such individuals, is apparently available to them, provided application is made for hearing within 90 days of the denial of benefits. In this connection, the court seeks to impose as small a burden as possible on the state, and, consistent with this goal, will not require it to answer plaintiffs' interrogatories. The effect of limiting the members of the class who will receive retroactive benefits to those who apply (and are otherwise qualified) has the effect of requiring the state department to investigate only those cases for which it receives applications. In other words, the state department will not be required to examine the records of each of the 159 Family and Children Services offices throughout the state in order to compile all of those persons who have been denied benefits solely due to the fact that they have not resided within the state for one year.

Further, Burson asserts, in his brief, "the Appropriations Act, as amended (Ga.L.1968, pp. 146, 178–179) for the current fiscal year provides funds only for matching purposes". Defendant's Reply Brief, p. 8, filed October 1, 1969. In this connection, the court notes that:

§ 6500. Federal Financial Participation is available in * * * (c) payments of assistance within the scope of the federally aided public assistance program made in accordance with a court order.

Federal Handbook of Public Assistance Administration § 6500(c). See Handbook Transmittal 147, dated September 30, 1968. His fears have no substance.

To summarize the court's definition of the class, it is composed of those persons who were otherwise eligible for public assistance payments and who applied for such assistance during the one year period prior to July 29, 1969. However, in order to receive these retroactive benefits, members of the class must have reapplied or must reapply within 60 days from the date of this order.

■ In fashioning this order, the court has balanced against the needs of the class and the diligence of the plaintiffs the potential economic and administrative burden to the state of paying retroactive payments and searching its files to determine to whom payments had been denied solely because of the failure to meet the residence requirement. Believing the remedy to be within the discretion of the court, under Machado v. Hackney, *supra,* and Robinson v. Hackney, *supra,* the court has struck a middle course. It has granted retroactive benefits to the class, as defined above, only to the date of filing of this action, July 29, 1969. Further, it has not required Burson to answer the plaintiffs' interrogatories, but only has required him to consider each applicant for retroactive benefits as he applies. In addition, under the authority of Shapiro v. Thompson, *supra,* the preliminary injunction restraining defendant Burson from enforcing residence requirements as prerequisites to public assistance benefits, is hereby continued and made a permanent injunction.