Alma H. OWENS, Individually and on Behalf of Other Persons Similarly Situated

v.

T. M. PARHAM, Individually and In His Capacity as Director of Division of Family and Children Services, J. Battle Hall, Individually and In His Capacity as Acting Commissioner of the Department of Human Resources.

Civ. A. No. 16592.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 29, 1972.

Jay E. Loeb, Nancy C. McCormick, and Michael H. Terry, Atlanta, Ga., for plaintiff.

Thomas H. Boyd, Atlanta, Ga., for defendants.

Before MORGAN, Circuit Judge, and MOYE and FREEMAN, District Judges.

## ORDER

FREEMAN, District Judge:

■■ This class action is brought by a welfare recipient to challenge the portion of the Georgia State Plan for the Aged, Blind and Disabled [1] (hereinafter referred to as State Plan) under which shelter and utility allowances are computed.[2] Plaintiff asserts that a portion of the State Plan is unconstitutional [3] and inconsistent with the So-

---

1. The challenged portion of the State Plan (Part III, § VII, Table 2, Part A) is set forth as an Appendix.

2. Under the State Plan the allowance for shelter and utilities decreases as the number of persons in the recipient's household increases.

3. Plaintiff asserts that Part III, § VII, Table 2, Part A, of the State Plan violates the due process and equal protection clauses of the Fourteenth Amendment to the U. S. Constitution.

cial Security Act[4] and federal administrative regulations.[5] Plaintiff demands injunctive and declaratory relief as well as retroactive assistance. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. This court has jurisdiction of the subject matter under 28 U.S.C. § 1343(3) and (4); 42 U.S.C. § 1983; Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Since this action is brought under the Civil Rights Act, 42 U.S.C. § 1983, the court need not consider questions of abstention or exhaustion of administrative remedies, King v. Smith, 392 U.S. 309, 312 at n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

This court will consider the pendent statutory claims as well as the constitutional claims presented. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Fla. Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960).

## STATEMENT OF THE CASE

Plaintiff Alma Owens is a resident of Atlanta, Georgia, and a citizen of the United States. Based on her need as a permanently and totally disabled person, Mrs. Owens is certified under state and federal law for Aid to the Aged, Blind and Disabled (hereinafter referred to as AABD). Defendant T. M. Parham, Director of the Division of Family and Children Services of the Department of

4. Plaintiff asserts that Part III, § VII, Table 2, Part A, of the State Plan does not conform with 42 U.S.C. § 1382(a)(8) and (14) which states:

  (a) A State plan for aid to the aged, blind, or disabled, or for aid to the aged, blind, or disabled and medical assistance for the aged, must—

  .   .   .   .   .

  (8) provide that all individuals wishing to make application for aid or assistance under the plan shall have opportunity to do so, and that such aid or assistance shall be furnished with reasonable *promptness to* all eligible individuals;

  .   .   .   .   .

  (14) provide that the State agency shall, in determining need for aid to the aged, blind, or disabled, take into consideration any other income and resources of an individual claiming such aid, as well as any expenses reasonably attributable to the earning of any such income;

  .   .   .   .   .

5. Plaintiff asserts that Part III, § VII, Table 2, Part A, of the State Plan does not conform with 45 C.F.R. § 233.10(a)(1)(ii) which states:

  (a) State plan requirements. A State plan under Title I, IV–A, X, XIV, or XVI, of the Social Security Act must:

  (1) Specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that

must be met by the individuals in the groups. Under this requirement:

  .   .   .   .   .

  (ii) The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act  .   .   . .

and that it does not conform with 45 C.F.R. § 233.20 which states in part:

  (a) Requirements for State Plans. A State Plan for DAA, AFDC, AB, APTD or AABD must, as specified below:

  (1) General. Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way except where otherwise specifically authorized by Federal statute.

  .   .   .   .   .

  (3) Income and resources; OAA, AFDC, AB, APTD, AABD.

  .   .   .   .   .

  (ii) Provide that, in establishing financial eligibility and the amount of assistance payment:

  .   .   .   .   .

  (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered;  .   .   . .

Human Resources (hereinafter referred to as the Department), is in charge of administering grants of public assistance. Defendant J. Battle Hall, Acting Commissioner of the State Department of Human Resources, is the chief administrative officer authorized to execute the functions vested in the State Department of Human Resources.

Plaintiff lives with her two adult sons, aged 19 and 20. Both sons attend school and are unemployed. They are too old to be covered by Aid to Families with Dependent Children (hereinafter referred to as AFDC), and they are not eligible for AABD. Neither son contributes any financial assistance to plaintiff or toward the cost of rent and utilities.

Prior to December 1, 1971, all AABD recipients were given a shelter allowance based on the number of persons eligible for aid on an "as paid" basis. Under this method plaintiff received a monthly grant of $91.00. Effective December 1, 1971, the Department changed its method to make the AABD recipient's shelter and utility allowance dependent on the number of persons in the household.[6] Under the present method plaintiff is receiving a monthly grant of $69.00.

On November 18, 1971, plaintiff received a formal notice that her AABD grant would be reduced from $91.00 to $69.00 due to the Department's change in method for determining basic budgetary needs. Plaintiff requested an administrative hearing at which she learned that the difference in her grant was due to a change in the method of computing need which was now based upon the number of individuals in the household rather than the number of individuals eligible for aid. The hearing was adverse to plaintiff as the Director held that plaintiff's grant was correctly computed.

Thereafter, plaintiff instituted the present action for injunctive and declaratory relief. Plaintiff seeks to maintain this action as a class action pursuant to Fed.R.Civ.P., Rule 23.

## CLASS ACTION

■ The court finds that the present action meets all the requirements of Fed.R.Civ.P., Rule 23(a) and (b)(3). Thus it may proceed as a class action. The class shall consist of all AABD applicants or recipients, who, during the pendency of this action, are living in the same household with other individuals who: (1) have no legal duty to support the applicant or recipient; (2) do not actually contribute toward the household's cost of shelter and utilities on a regular basis; and (3) are not certified as eligible for assistance under any Georgia State Welfare Plan.

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff attacks the shelter and utility allowance provisions set forth in Part III, § VII, Table 2, Part A, of the State Plan by seeking a declaratory judgment that it is invalid on its face and as applied, and by seeking an injunction ordering defendants to refrain from administering it out of conformance with 42 U.S.C. § 1382(a)(8), HEW administrative regulations and the due process and equal protection clauses of the Fourteenth Amendment. This attack is based on the following contentions that:

(1) Part III, § VII, Table 2, Part A, does not comply with the requirement of 42 U.S.C. § 1382(a)(8) that assistance (AABD) shall be furnished to all eligible individuals with reasonable promptness and the requirements of 45 C.F.R. § 233.20 that in determining need a State Plan for AABD must not assume income but must take into account only net income and resources actually available for current use on a regular basis. Plaintiff asserts that the Table assumes

---

6.  The State Plan at Part III, § VII, p. 25 provides that "all persons living together under the same roof as a family unit are considered as members of the household for budgeting purposes."

available income to meet shelter and utility costs when AABD recipients live with non-AABD recipients without determining whether the non-eligible individuals are actually contributing or legally responsible for the AABD recipient.

(2) Part III, § VII, Table 2, Part A, does not comply with the requirements of 45 C.F.R. § 233.10(a)(1)(ii) that a State Plan for AABD must specify the groups selected for inclusion and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis and that it must not result in inequitable treatment of individuals or groups in light of the provisions and purposes of the Social Security Act. Plaintiff asserts that the Table arbitrarily provides a lower standard of need and lower grants for AABD recipients living with non-eligible individuals than similarly situated recipients living alone or in all recipient households.

(3) Part III, § VII, Table 2, Part A, violates the equal protection clause of the Fourteenth Amendment by creating a separate class of AABD recipients who live with non-eligible individuals without any legitimate, rational or reasonable basis.

(4) Part III, § VII, Table 2, Part A, violates the due process clause of the Fourteenth Amendment by creating a conclusive presumption that income to meet shelter and utility costs will be available to an AABD recipient when non-eligible individuals are living in the same household.

■■ Before dealing with plaintiff's contentions a brief examination of the purposes and requirements of the AABD program is appropriate. It was created by Congress:

For the purpose (a) of enabling each State, as far as practicable under the conditions in such State, to furnish financial assistance to needy individuals who are 65 years of age or over, are blind, or are 18 years of age or over and permanently and totally disabled, (b) of enabling each State, as far as practicable under the conditions in such State, to furnish medical assistance on behalf of individuals who are 65 years of age or over and who are not recipients of aid to the aged, blind, or disabled but whose income and resources are insufficient to meet the costs of necessary medical services, and (c) of encouraging each State, as far as practicable under the conditions in such State, to furnish rehabilitation and other services to help individuals referred to in clause (a) or (b) to attain or retain capability for self-support or self-care, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for aid to the aged, blind, or disabled or for aid to the aged, blind, or disabled and medical assistance for the aged. 42 U.S.C. § 1381.

Thus it is apparent that the focus in the AABD program is on the individual as contrasted to the focus in the AFDC program on the family. Compare 42 U. program on the family. *Compare* 42 U. S.C. § 1381 *with* 42 U.S.C. § 601. Georgia's assistance program for AABD is one of six federally-aided public assistance programs established by the Social Security Act (42 U.S.C. § 1381 et seq.). It is optional with each state whether it wishes to participate in any or all of the programs. Since Georgia elected to participate in the AABD program, both the Georgia State Plan and its administration must conform to the mandatory provisions of the Social Security Act and the valid regulations

of HEW.[7] *See* Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Holloway v. Parham, 340 F.Supp. 336 (N.D.Ga.1972).

Congress has afforded the states considerable latitude in allocating their financial resources to its welfare programs by allowing the states to establish the "standard of need" (method for determining who is eligible to receive public assistance) and the "level of benefits" (amounts to be paid those who are eligible). *See, e.g.*, King v. Smith, 392 U.S. 309, 88 S.Ct. 21, 28, 20 L.Ed.2d 1118 (1968).

Keeping the above principles in mind the court will examine the validity of Part III, § VII, Table 2, Part A, of the State Plan on its face and as applied.

#### VALIDITY OF PART III, § VII, TABLE 2, PART A, ON ITS FACE

The court's first duty is to interpret Part III, § VII, Table 2, Part A, keeping in mind that if more than one interpretation is possible the one that will uphold its constitutional validity is preferred.

As to plaintiff's first contention that the Table contravenes 42 U.S.C. § 1382(a)(8), the Supreme Court has recently interpreted the corresponding section for AFDC—42 U.S.C. § 602(a)(10). In Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) the court stated:

> Nor are appellants aided by their reference to Social Security Act, § 402(a)(10), 42 U.S.C. § 602(a)(10), which provides that AFDC benefits must "be furnished with reasonable promptness to all eligible individuals." That section was enacted at a time when persons whom the State had determined to be eligible for the payment of benefits were placed on waiting lists, because of the shortage of state funds. The statute was intended

to prevent the States from denying benefits, even temporarily, to a person who has been found fully qualified for aid. See H.R. Rep. No. 1300, 81st Cong., 1st Sess., 48, 148 (1949); 95 Cong.Rec. 13934 (1949) (remarks of Rep. Forand). Section 402(a)(10) also forbids a State from creating certain exceptions to standards specifically enunciated in the federal Act. See, *e.g.*, Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). It does not, however, enact by implication a generalized federal criterion to which States must adhere in their computation of standards of need, income, and benefits. Such an interpretation would be an intrusion into an area in which Congress has given the States broad discretion, and we cannot accept appellants' invitation to change this longstanding statutory scheme simply for policy consideration reasons of which we are not the arbiter. At 544–545, 92 S.Ct. at 1730–1731. [footnote omitted]

Thus by analogy the court finds that plaintiff's contention as to 42 U.S.C. § 1382(a)(8) has no merit. Plaintiff's contention as to 45 C.F.R. § 233.-20 will be considered with plaintiff's fourth contention.

Plaintiff's second contention that the Table contravenes 45 C.F.R. § 233.-10(a)(1)(ii) by setting up arbitrary and unreasonable treatment to AABD recipients living with non-eligible individuals, is essentially an equal protection argument and thus it will be resolved by the court's treatment of plaintiff's third contention.

Plaintiff's third contention is that the Table discriminates against AABD recipients living with non-eligible individuals by granting larger allowances for shelter and utilities to AABD recipients who live alone or with other AABD recipients. Thus the question before the court is does the disparity in shelter and

---

7. HEW may partially or entirely terminate federal payments if the state fails to comply substantially with the requirements of 42 U.S.C. § 1382. 42 U.S.C. § 1384.

utility allowances constitute arbitrary, unreasonable and invidious discrimination in violation of the Fourteenth Amendment.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) the Court stated:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393. At 485, 90 S.Ct. at 1161.

In this case the state has a "reasonable basis" for allowing greater shelter and utility allowances to AABD recipients living alone than to AABD recipients living with non-eligible individuals. The state conducted studies and compiled statistical data which substantiates the fact that as the size of a household increases the pro rata cost of shelter and utilities decreases. The court thinks this conclusion would be rather obvious even without statistical support. Thus the court finds that although the Table does discriminate, the discrimination is not invidious and it is based on a sound and reasonable basis. Therefore the Table does not violate the equal protection clause nor contravene 45 C.F.R. 233.10(a)(1)(ii).

Plaintiff's fourth contention is that the Table has the effect of establishing a conclusive presumption that when an AABD recipient resides in a household with non-eligible individuals, income is available from those individuals to help pay the household's shelter and utilities expense and thus it violates due process as well as contravening HEW regulations (45 C.F.R. 233.20) by assuming income.

Although the court agrees with plaintiff that the Table establishes a presumption, we do not agree with the manner in which plaintiff states the presumption. We believe it can be more appropriately stated that the Table presumes that non-eligible individuals living in the same household with an AABD recipient are bearing the burden of their pro rata share of the household's shelter and utility costs. Or stated another way, the Table presumes that when an AABD recipient resides in a household with non-eligible individuals, the cost of the AABD recipient's need for shelter and utilities is no more than his pro rata share of the household's shelter and utility costs.

Although legislation creating a rebuttable presumption can comply with due process, legislation creating a conclusive presumption (one that is incapable of being overcome by proof of the most positive character) cannot withstand a due process attack. *See* Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932). Thus the court finds that in view of the Social Security Act, HEW regulations and case law, on its face the Table has the effect of creating a rebuttable presumption rather than a conclusive presumption.

However, for the presumption to be valid there must be a rational connection between the presumed fact and the basic fact. *See, e.g.,* Heiner v. Donnan, *supra.* The court believes that it was reasonable on its face for the Department to assume that other persons in the household, who are adults and in no way physically or mentally handi-

capped, are paying their pro rata share of the household's shelter and utilities costs. Thus there is a rational connection between the presumption that other members of the household are bearing the burden of their pro rata share of the household's shelter and utility costs and the basic fact that as the size of the household increases the pro rata share of the household's shelter and utility costs decreases.

Thus the Table does not assume income but rather it assumes decrease in the cost of need for shelter and utilities as the size of the household increases. Therefore, on its face, Part III, § VII, Table 2, Part A, does not contravene 45 C.F.R. 233.20 or violate the due process clause of the Fourteenth Amendment. The court finds that the Table on its face creates a valid rebuttable presumption.

### VALIDITY OF PART III, § VII, TABLE 2, PART A, AS APPLIED

■■■■ Although the Table on its face is valid, due process requires that plaintiff be given an opportunity to rebut the presumption. The Department has not afforded plaintiff such an opportunity. Thus Part III, § VII, Table 2, Part A, has been applied in violation of the due process clause of the Fourteenth Amendment. In fact the record is barren of evidence of any procedure whereby an affected AABD recipient may exercise his right to try to rebut the presumption. Accordingly, within thirty days after the filing of this order, the Department is directed to implement suitable means of informing affected AABD recipients of their right to try to rebut the presumption.[8]

### RETROACTIVE RELIEF

■■■ Plaintiff has requested retroactive relief to May 1, 1972, for herself and all the members of her class. The granting of retroactive relief is within the sound discretion of the court. *See, e.g.,* Ramos v. Montgomery, 313 F.Supp. 1179 (S.D.Cal.1970), aff'd 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618 (1971); Bryson v. Burson, 308 F.Supp. 1170 (N.D.Ga.1969). Although plaintiff has requested retroactive relief, counsel neither briefed the issue nor touched upon it at oral argument. After weighing the burdens imposed on the state against the benefits to be gained by plaintiffs, the court believes that retroactive relief is not warranted in the present case. Therefore the court denies plaintiff's request for retroactive relief.

Accordingly the court today ordered:

(1) The action maintained as a class action pursuant to Fed.R.Civ.P., Rule 23(a) and (b)(3);

(2) Part III, § VII, Table 2, Part A, declared constitutionally valid on its face;

(3) Part III, § VII, Table 2, Part A, declared invalidly applied;

(4) Plaintiff's request for retroactive relief denied;

(5) Plaintiff's case remanded to defendant Department;

---

8. As to the named plaintiff, the court notes that she has submitted an affidavit stating that her sons are in school, unemployed. Thus it appears that they are not sufficiently able to bear the burden of their share of the household's shelter and utility costs. On remand the Department should consider Ga.Code Ann. § 23–2302 in light of the above comments. Thus absent a change in circumstances on the part of her sons, Mrs. Owens should be treated as an assistance group of one in a household of one. Ga.Code Ann. § 23–2302 states:

> Parents and children of paupers bound to support them.—The father, mother or child of any pauper contemplated by the preceding section, if sufficiently able, shall support such pauper. Any county having provided for such pauper upon the failure of such relatives to do so may sue such relatives of full age and recover for the provisions so furnished.

(6) The Department to implement suitable means of informing affected AABD recipients of their right to rebut the presumption created by Part III, § VII, Table 2, Part A, within thirty (30) days of the date of this order.

It is so ordered.

## APPENDIX

GS-126
Part III, Section VII

Georgia State Department of Family and Children Services

TABLE 2, PART A — STANDARDS FOR ASSISTANCE BUDGETS — AABD PROGRAMS

### BASIC BUDGETARY ITEMS COMBINED
(Monthly)

| Persons In Assistance Group | Basic Budgetary Items | Number Of Persons In Household | | | | | | | | | | Persons In Assistance Group |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 or more | |
| 1 | Food | $ 42.00 | $ 42.00 | $ 42.00 | $ 42.00 | $ 42.00 | $ 42.00 | $ 42.00 | $ 42 00 | $ 42.00 | $ 42 00 | 1 |
| | Clothing | 4.75 | 4.75 | 4.75 | 4.75 | 4.75 | 4 75 | 4.75 | 4.75 | 4.75 | 4.75 | |
| | MC & I | 7.00 | 7.00 | 7.00 | 7.00 | 7 00 | 7.00 | 7 00 | 7 00 | 7.00 | 7.00 | |
| | Heating | 4 20 | 2 45 | 1.80 | 1.45 | 1.20 | 1 05 | 0.90 | 0 80 | 0 75 | 0.70 | |
| | Cooking | 2.80 | 1.70 | 1.30 | 1.10 | 0.90 | 0 80 | 0 70 | 0.60 | 0 60 | 0.50 | |
| | Lights | 1.50 | 0 75 | 0.50 | 0 40 | 0 30 | 0.25 | 0 20 | 0 20 | 0 15 | 0 15 | |
| | Water | 3 00 | 1.50 | 1.00 | 0.75 | 0.60 | 0 50 | 0 45 | 0.40 | 0.35 | 0 30 | |
| | Transport. | 5.00 | 5 00 | 5.00 | 5.00 | 5 00 | 5.00 | 5.00 | 5 00 | 5.00 | 5.00 | |
| | Shelter | 40 00 | 20 00 | 15 33 | 11.50 | 10.00 | 8 33 | 7 57 | 6.63 | 6 00 | 5.40 | |
| | **Total** | 110.25 | 85.15 | 78 69 | 73.95 | 71 75 | 69.68 | 68 57 | 67.38 | 66.60 | 65.80 | |
| 2 | Food | 84.00 | 84.00 | 84.00 | 84.00 | 84 00 | 84 00 | 84.00 | 84.00 | 84 00 | | 2 |
| | Clothing | 9.50 | 9.50 | 9.50 | 9.50 | 9.50 | 9.50 | 9 50 | 9 50 | 9 50 | | |
| | MC & I | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14 00 | 14.00 | 14.00 | 14 00 | | |
| | Heating | 4.90 | 3 60 | 2.90 | 2 45 | 2.10 | 1 85 | 1 65 | 1.50 | 1.35 | | |
| | Cooking | 3.40 | 2.60 | 2.20 | 1.80 | 1.60 | 1 40 | 1.30 | 1.20 | 1 10 | | |
| | Lights | 1.50 | 1.00 | 0.80 | 0.60 | 0.50 | 0 40 | 0 40 | 0.30 | 0.30 | | |
| | Water | 3.00 | 2.00 | 1.50 | 1.20 | 1.00 | 0.90 | 0.80 | 0.70 | 0.60 | | |
| | Transport | 10 00 | 10 00 | 10.00 | 10.00 | 10 00 | 10 00 | 10 00 | 10.00 | 10.00 | | |
| | Shelter | 40 00 | 30.66 | 23 00 | 20 00 | 16 66 | 15.14 | 13 26 | 12.00 | 10 80 | | |
| | **Total** | 170.30 | 157.36 | 147.90 | 143.55 | 139.36 | 137.19 | 134.91 | 133.20 | 131.66 | | |

Food allowances revised effective June 1971. Medicine chest-incidentals (MC & I) revised effective April 1970   Transportation item revised June 1970.   Flat shelter standard initiated December 1971.

[A6493]