**MOTHERS AND CHILDRENS RIGHTS ORGANIZATION, INC., an Indiana not-for-profit corporation, et al., Plaintiffs,**

v.

**Wayne A. STANTON, Individually and in his capacity as Administrator of the Indiana State Department of Public Welfare, et al., Defendants.**

Civ. No. 72 F 69.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

Aug. 29, 1973.

Ivan E. Bodensteiner and William Rastetter, Legal Services Program, Fort Wayne, Ind., Seymour H. Moskowitz and Linda D. Moskowitz, Project Justice & Equality, Gary, Ind., for plaintiffs.

Gary L. Thompson and Elizabeth H. Hamacher, Deputy Attys. Gen., Indianapolis, Ind., for State Welfare Dept., defendants.

Philip H. Larmore and Robert H. Berning, Fort Wayne, Ind., for defendant John E. Heiny.

C. Jerome Smith, Hammond, Ind., for defendant John D. Kelley.

**300**

### MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

Plaintiffs bring this class action to challenge certain forms, regulations, and procedures of the Indiana State Department of Public Welfare governing the administration of Indiana's public assistance program on the grounds that they are in conflict with the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and that they are in contravention of the Social Security Act, §§ 601–644, and regulations promulgated thereunder by the Department of Health, Education, and Welfare, 45 C.F.R. 233.20(a)(1), 223.20(a)(3)(ii), 233.-90(a). Specifically, plaintiffs challenge the method and the supposedly supporting regulations and computation form, DPW 5A, by which defendants establish the costs of Basic Needs (food, clothing, personal needs, utilities, household supplies) and of shelter of Indiana residents who, for purposes of this case, receive benefits under the Aid to Families with Dependent Children program (AFDC) and who live in a household with one or more nonrecipients. Plaintiffs are members of, or purport to represent, a class of persons eligible for benefits under AFDC who have been harmed by the challenged practices. Defendants include the members of the Indiana State Board of Public Welfare and the Administrator of that department. Also named as defendants are the Directors of the Allen and Lake County, Indiana, Departments of Welfare. Plaintiffs seek a preliminary and permanent injunction restraining the enforcement of the challenged regulations and procedures and requiring defendants to pay retroactive benefits to members of the class denied benefits by the allegedly illegal activity of defendants.

This action is founded upon 42 U.S.C. § 1983, and jurisdiction is established under 28 U.S.C. § 1343(3). Gaither v. Sterrett, 346 F.Supp. 1095 (N.D.Ind.) (three-judge court), aff'd, 409 U.S. 1070, 93 S.Ct. 688, 34 L.Ed.2d 660 (1972). See King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Because the constitutional questions were not insubstantial and because plaintiffs sought an injunction restraining the enforcement of statewide regulations, a three-judge court was convened pursuant to 28 U.S.C. 2281 and 2284. Id. On November 1, 1972, this cause was remanded, on plaintiffs' motion, to the undersigned single judge for a determination of the statutory questions presented by the plaintiffs' complaint. Rosado v. Wyman, 397 U.S. 397, 402–403, 90 S.Ct. 1207, 1212–1213, 25 L.Ed.2d 442 (1970). A hearing on the statutory claims was had in this court on February 23, 1973, at which time, pursuant to Rule 65(a)(2), Fed.R.Civ.P., and to the agreement of the parties, trial on the merits was advanced and consolidated with the hearing on plaintiffs' motion for a preliminary injunction. This court concludes that the challenged portions of DPW Form 5A and of the underlying regulations are facially valid but that in the application of the form and regulations, defendants conflict with the Social Security Act, §§ 601–644.

As an initial matter, certain preliminary rulings are necessary. First, the court finds that the prerequisites to a valid class action have been met pursuant to Rule 23(a) and (b)(2), Fed.R.Civ.P. Cf. Owens v. Parham, 350 F.Supp. 598 (N.D.Ga.1972) (three-judge court); Gaither, supra. The class consists of all Indiana residents otherwise eligible for AFDC whose benefits were denied, terminated, or reduced or so threatened because of the mere presence in the household of one or more individuals not eligible for AFDC benefits and not legally obligated to support members of the household eligible for benefits.[1]

---

1. Plaintiffs apparently would expand the class to include individuals otherwise eligible for benefits under the programs for Blind Assistance, Assistance to the Disabled, and Old Age Assistance. This is inappropriate on three grounds. First, plaintiffs' statuto-

Secondly, the court finds defendants' motions to dismiss or transfer to be without merit. Defendants' Eleventh Amendment argument that this cause is in fact a suit against the State of Indiana and therefore barred has been considered and rejected by the United States Court of Appeals for the Seventh Circuit. Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973). Equally without merit are defendants' claims that the State has absolute, unreviewable discretion as to the definition and determination of "need," see King, supra; 'Owens, supra, and that this court is without jurisdiction because plaintiffs have not alleged the $10,000 minimum amount required for establishing jurisdiction under 28 U.S.C. § 1331. This section, as above-noted, is not the jurisdictional basis of this action. Defendants next argue that venue in the Northern District of Indiana is improper under 28 U.S.C. § 1391. However, venue in this district is proper since all defendants reside in Indiana and several reside in the Northern District. 28 U.S.C. § 1392. Moreover, at least the claim of the Smith family arose in the Northern District. Jimenez v. Pierce, 315 F.Supp. 365 (S.D.N.Y.1970). Defendants also may be arguing that even if venue is proper in this district, the proper division is the Hammond Division. One of the named defendants, however, resides and works in his official capacity in this division and, as the alleged harm occurs statewide and involves that defendant's duties directly, he is a proper party and his presence herein supports venue in this division. 28 U.S.C. § 1393. Defendants finally argue that HEW has not been named a defendant and is an indispensable party. Since plaintiffs do not question the facial validity of any HEW regulation and since disposition of this case will not require any declaration

of invalidity of such regulations, HEW is not indispensable. See Green v. Stanton, 364 F.Supp. 123, at p. 128 (N.D. Ind.1973) (appeal pending). At the same time, as defendants suggest, it is helpful to have before this court the position of HEW on the issues in dispute. This assistance has been provided through the filing with this court of an amicus brief on behalf of HEW. In this regard HEW's position should be given careful consideration, as this court has done, but that position is not conclusive on the questions raised. See Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971).

Under the Indiana plan, generally, the determination of the amount of the welfare payment for a particular assistance unit is a two-step process. First, there is determined the cost of basic needs and certain special needs and of a limited level of shelter. Then, income available to the unit is subtracted from this amount, with the difference constituting the amount of the welfare payment. The costs of basic needs and of shelter, the matters at issue in this case, are computed as follows: For basic needs a standardized table is used, with the proper amount being in part a function of the number of individuals in the assistance group and the number in the household. The latter number includes those living in the household who are not eligible for AFDC benefits, and it is only the effect given this factor which plaintiffs attack. As the number of individuals in the assistance group increases, the cost attributed to satisfying the unit's basic needs increases. This increase, however, is in less than proportional amounts, i. e., the amount established for each larger group is less than the amount obtained by multiplying the amount for one recipient living alone by

ry claim is that defendants have violated the requirements for the program found at 42 U.S.C. §§ 601–644, and this is the AFDC program only. Secondly, plaintiffs' claims are complex so that detailed examples of the wrong allegedly done with background circumstances are particularly helpful as an aid

to analysis. However, the only example in the record is that of the plaintiff Smith family, an AFDC situation. Thirdly, plaintiffs in their filings make no specific analysis or allegation regarding these other programs.

the number of recipients. For instance, the increase in the cost of needs of an assistance group of five in a household of five over a group of four in a household of four is $53.05, while the increase in cost for a like group of six over a like group of five is only $44.65. The economic theory behind these less than proportional increases is that as the number of persons in a household increases, what the Supreme Court and plaintiffs' expert at the hearing identify as "economies of scale" come into play. *See* Dandridge v. Williams, 397 U.S. 471, 479–480, 90 S.Ct. 1153, 1159, 25 L.Ed.2d 491 (1970). These economies may include increased efficiency in the use of goods such as heating and electricity which permit joint consumption, more thorough consumption, and consequent decreased wastage of perishable goods such as certain foods, and decreased per unit costs for goods purchased in bulk.

Plaintiffs' dissatisfaction, so far as the basic needs computation is concerned, is with defendants' attempt to adapt economies of scale concepts to the case where the assistance group has living in the same household one or more nonrecipients. In such a case, first the costs of basic needs are estimated for all living in the household, including an adjustment for economies of scale. Then, to obtain the costs of needs for the assistance unit, the total cost is divided by the number of persons in the household and the resulting amount is multiplied by the number of persons in the assistance unit. For instance, in the case of the plaintiff Smith family, the total cost to satisfy the basic needs for the household of six, as taken from DPW Form 5A, is $360.90. Since, however, Sharon Smith is eighteen, she is ineligible, under regulations unchallenged by plaintiffs, to receive AFDC benefits even though she remains in the household. The cost of needs of the remaining five members of the Smith family is determined by multiplying $60.15 ($360.90 divided by 6) by 5, establishing $300.75 as the cost of need of an assistance unit of five living in a household of six. If Sharon moved

out, or if the computation were made without reference to her, the cost of needs of the five Smith family members in the assistance unit would be $316.25, which is the established cost of five in a household of five eligible recipients. The $15.50 difference arises because under the economies of scale theory, five persons living in a household of six and contributing their share of total costs can live more cheaply than five persons living in a household of five. When the economies of scale theory is applied to a mixed household, one consideration, entailed in the Indiana plan and defendants' application thereof, becomes relevant which is not relevant in considering a household composed solely of AFDC recipients. The nonrecipient is presumed to contribute one equal share of the household expenses. If all in the household are recipients, any income available to the unit is permissibly used to reduce the welfare payments for basic needs. As practiced, defendants treat this presumption underlying the Indiana plan as irrebuttable, which is to say they deem it irrelevant whether the nonrecipient *in fact* contributes his share of the expenses.

The presence in the household of nonrecipients along with recipients also is significant with regard to the computation of cost of shelter of Indiana AFDC recipients. This computation, while more significant in dollar terms to an assistance unit, is less complex than is that for basic needs. Here the Indiana plan does not establish a dollar figure which would vary with the particular number of persons in an assistance unit or in a household. Rather, the State allows the actual cost of shelter up to a maximum of $100. This amount is decreased as follows if nonrecipients live in the household: Each nonrecipient is considered a separate assistance unit, and the allowed shelter cost is divided equally among the "assistance units." For instance, in the case of the Smith family, the five welfare recipients are one assistance group and the eighteen-year-old nonrecipient daughter is anoth-

er, and, since the actual shelter cost exceeds $100, the cost of the shelter for each group is computed to be $50. The presumption underlying this computation is that the nonrecipient contributes his estimated share of shelter cost. As with the basic needs computation, defendants in practice make this presumption irrebuttable.

Plaintiffs claim that as to both shelter and basic needs computations defendants' method of computation and the regulations allegedly underlying that method are in conflict with provisions of the Social Security Act and HEW regulations promulgated thereunder. Specifically, plaintiffs cite 45 C.F.R. 233.-20(a)(3)(ii), 233.90(a), and 233.-20(a)(1). The first two of these provide, essentially, that in computing a unit's income, only currently available resources are to be included. The third provides in pertinent part as follows:

[A state plan must] provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken in consideration in the same way. . . .

This last regulation makes explicit a necessary inference of the AFDC portion of the Social Security Act, especially 42 U.S.C. § 602.

■■ In interpreting the challenged State DPW Form 5A, its implementing regulations in the Indiana Public Assistance Manual, and administrative practices thereunder, this court will presume that Indiana intends to conform with federal law. Of importance in this regard is that the facial validity of state regulations and the validity of the application of those regulations present two different issues, so that a finding of invalidity of the latter does not necessitate a similar finding as to the former. *Owens, supra.* Here, the chart and supporting regulations in their essence conform on their face with federal statute, but defendants' method of application violates the federal requirement that the state practice be "objective and equitable."

■■ Although the "objective and equitable" requirement has not frequently been interpreted judicially, at least its minimum requirement is clear, namely, state programs must be consistent and compatible with the goals and priorities of the federal statute and regulations. *Cf.* Marotti v. White, 342 F.Supp. 823 (D.Conn.1972) (three-judge court). Under the federal statute, the paramount purpose of AFDC is the protection of needy dependent children, and another significant goal is the preservation of the family unit. *See King, supra,* 392 U.S. at 329–330, 88 S.Ct. at 2140, 20 L. Ed.2d 1118; Doe v. Hursh, 337 F.Supp. 614 (D.Minn.1970); Ramos v. Montgomery, 313 F.Supp. 1179 (S.D.Cal.1970) (three-judge court), aff'd, 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618. Within these constraints the state has a legitimate interest, in which actual and potential welfare recipients share, in insuring that the state provide an assistance unit only with that amount of money by which the unit's state-determined needs exceed the unit's actual income. Also, in the interest of administrative efficiency, the state, in drafting its provisions, may use reasonable normative presumptions, thereby limiting the necessary administrative hearings in individual cases to those in which the norm is challenged. *Cf. Owens, supra; Hursh, supra.* Examples of legitimate actions by the state under these goals are the taking into account economies of scale in determining needs of an assistance unit living alone and the deducting from needs the income actually received by the unit.

In comparing state action with legitimate purposes under the federal plan, this court will treat separately basic needs and shelter computations. The question with regard to both is whether the state presumption conforms to federal standards. As to basic needs, the state adopts the presumption that nonrecipients contribute one equal share of the established cost of household expens-

es. In practice the defendants make this presumption irrebuttable, and in so doing they cause needless conflict with the federal program and standards. By not permitting rebuttal of the presumption, defendants insure that significant, immediate harm will be done to many assistance groups, since the presumption frequently will not reflect the true underlying circumstances. The plaintiff Smith family presents an example of such harm. This harm is needless since, as more fully developed below, the lesser action of establishing a rebuttable presumption adequately protects legitimate state interests and at the same time protects the paramount interest of the dependent child. If the interests of all concerned inevitably conflicted so that, e. g., protecting the integrity of the state-federal program entailed some harm to welfare recipients, the question would be squarely presented whether on balance the Indiana practice furthered the purposes of the federal statute. Where, as here, state practice does not inevitably cause a conflict, no such difficult question is presented. In fact, no balancing is required since by including an irrebuttable presumption of contribution, the defendants' practice, with no justification appearing, conflicts with the paramount goal of protecting needy children. Defendants offer no justification relevant to the federal goals which would support utilization of an irrebuttable application of the challenged Table. In sum, to the extent that defendants' actual practice includes an irrebuttable presumption that nonrecipients pay one equal share of household expenses, that practice is inequitable. In so deciding, this court is not purporting to address, as it could not, the question of whether an irrebuttable presumption of the sort used by defendants violates the due process clause of the Fourteenth Amendment. Compare Owens, supra, with Dullea v. Ott, 316 F.Supp. 1273 (D.Mass.1970) (three-judge court).

The argument is made that defendants' irrebuttable presumption is no different from the many rough estimates used by a state in calculating the costs of a given amount of needed goods, which estimates by definition cannot hold true in all cases, but which are nevertheless acceptable under federal law. See Wyman, supra. An example of such an estimate is that a family will need a certain number of pairs of shoes per year at a cost of a specified sum per pair. Even assuming such estimates are everywhere acceptable, the present factual situation as a practical matter is significantly different, and thus warrants the special treatment this court has given it. Cf. United States Dept. of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). The shoe-type calculation merely involves estimates of impersonal economic forces generally and constantly at play in the state, while the calculations here challenged involve estimates regarding the relationship of a particular assistance group to a particular nonrecipient member of the household.

While the defendants' actual practice is inconsistent with federal law, the chart itself and the regulations taken as a whole do not violate federal law, as they permit an interpretation that the presumption set out is rebuttable. The chart itself is neutral and does not compel defendants' practice. The underlying state regulations permit conflicting interpretations on the matter. Significantly and in support of the interpretation that the presumption is rebuttable, the term "persons in household," a key term in the computation here at issue, is defined in the Indiana regulations in pertinent part as "those persons who . . . share common household expenses, whether or not related by marriage or blood." IV–E–2a(1), Ind.Pub. Asst. Manual (emphasis added). Interpreting state law to conform where reasonably possible with federal law, this court interprets the chart and the essence of the regulations as creating a rebuttable presumption. As a rebuttable presumption, the chart and regulations reconcile the federal purposes in the AFDC program and thus are objective

and equitable: The state avoids paying funds not necessary under its definition of need; administrative efficiency is furthered; the welfare budget is protected for other needy recipients; and assistance groups living with nonrecipients not in fact sharing household expenses are protected by their right to rebut the assumed sharing of expenses. *Cf. Hursh, supra.* Moreover, in this regard, this court finds, in full agreement with the *Owens* court conclusion *supra,* 350 F.Supp. at 604–605 regarding a similar rebuttable presumption, that "it was reasonable . . . for [defendants] to assume that other persons in the household, who are adults and in no way physically or mentally handicapped, are paying their pro rata share" of household expenses.

The state plan facially not only is "objective and equitable" as interpreted but also in other respects conforms with the federal requirements. While plaintiffs argue that as an irrebuttable presumption the challenged plan is an invalid "assumption of income," they do not address the matter of a rebuttable presumption on this point. The court need not consider plaintiffs' argument on the irrebuttable presumption, *compare Owens, supra, with* Hausman v. Dept. of Institutions and Agencies, 124 N.J.Super. 139, 305 A.2d 85 (App.Div., Decided May 24, 1973), as such a presumption is invalid on other grounds. As for the rebuttable presumption, it in no way conflicts with the requirement of 42 U.S.C. 602(a)(7) proscribing assumption of income. To the extent that the sharing of expenses presumed by the chart and state regulations is shown by the assistance group to be false, the assumption will be eliminated and will have no effect in the state's calculations. *See* Jenkins v. Georges, 312 F.Supp. 289 (W.D. Pa.1969) (three-judge court), in which the court strikes down an assumption of sharing of expenses, but in doing so quite clearly indicates it is condemning the irrebuttable aspect of the presumption.

What has been said to this point disposes in large part of the issues regarding computation of shelter costs of an assistance group. In this area, the state plan creates a presumption, which defendants in practice make irrebuttable, that a nonrecipient in a household will share in the shelter costs in an amount equal to that of the assistance unit, up to a maximum payment of $50 per month. Defendants' practice of making the presumption irrebuttable suffers from the same defects as does their practice regarding basic needs computation, and, in like manner, the practice as to shelter conflicts with federal law. Likewise, as with the basic needs computation, the chart and supporting regulations reasonably may be interpreted as creating a rebuttable presumption, and as so interpreted they satisfy federal law. Moreover, the rebuttable presumption is reasonable. It is reasonable at least that a nonrecipient will share in shelter costs, just as it is reasonable he will share in household expenses. It also is reasonable for Indiana to make an initial dollar estimate as to the amount of that contribution and to make that estimate in terms of the potential payment by the state to the assistance unit, namely, in terms of the $100 maximum. While plaintiffs object to this latter point, they do not pursue the matter in brief or oral argument, and it is without merit in any event. *See* Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). In essence, Indiana assumes the nonrecipient will contribute in proportion to the economic value of his shelter, and the state plan includes an initial estimate of that economic value, with a $50 maximum being placed thereon. This amount is not arbitrary, unreasonably high, or predictably out of line with the facts in individual cases so long as the presumed contribution is subject to rebuttal in individual cases. Again, this court need not decide whether as an irrebuttable presumption the presumption would be an "assumption of income."

In sum, then, the Indiana plan is facially valid as creating certain reasonable rebuttable presumptions. Defendants however, have applied the regulations in an invalid manner. They express no interest in the truth of the presumptions in the particular case, and in fact the record is barren of evidence of any procedure whereby an affected AFDC recipient may exercise his right to attempt to rebut the Indiana presumptions. As a specific example, defendants have given no such opportunity to the plaintiff Smith family. Defendants will be directed to conform in practice to the regulations as interpreted herein in accordance with federal law. For instance, as developed at the hearing regarding the plaintiff Smith family, Sharon Smith has no income and does not contribute as the state presumes. Hence, the cost of basic needs for the assistance unit should be computed from the chart as the cost for a unit of five in a household of five and shelter cost should be established without reference to any erroneously presumed contribution from Sharon. This court's opinion, of course, is limited to the use and effect of the presumptions of shared expenses in the Indiana plan when recipients and nonrecipients live together.

Plaintiffs seek retroactive payments for the Smith family in particular and the class generally. The granting of retroactive relief is within the sound discretion of the court. *Jordan, supra.* In light of the approval by HEW of the exact practice here being challenged and in light of the state's obvious good faith, this court concludes that on balance retroactive relief is not warranted. *See Green, supra.*

### ORDER AND JUDGMENT

Accordingly, it is hereby ordered and adjudged that the challenged Indiana regulations are facially valid as creating rebuttable presumptions and that consequently plaintiffs' motion to enjoin all application of these regulations is denied; provided, however, defendants' present application of these presumptions as irrebuttable conflicts with the Social Security Act, and therefore defendants, their agents and employees are enjoined from any such computations involving the use of irrebuttable presumptions as applied to the class defined in this opinion; and provided further that defendants and their agents and employees are ordered to provide and implement within sixty (60) days of the date of this order suitable and reasonable means by the use of which the Smiths and their class are given the opportunity to rebut the presumptions created and applied by the use of DPW Form 5A consistent with this opinion, and within the same period the Smith family and their class as defined in this memorandum shall be notified of the right to rebut and the administrative procedure for doing so.