JO ANN HAUSMAN, RESPONDENT, v. DEPARTMENT OF INSTITUTIONS AND AGENCIES, DIVISION OF PUBLIC WELFARE, IRVING ENGELMAN, DIRECTOR, APPELLANT.

Argued December 3, 1973—Decided January 22, 1974 — As Amended February 4, 1974.

*Mrs. Joan W. Murphy,* Deputy Attorney General, argued the cause for appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* First Assistant Attorney General, of counsel; *Mrs. Murphy,* on the brief).

*Mr. Michael J. Weintraub* argued the cause for respondent (*Mrs. Alice Ashley Costello,* Director, Legal Aid Society of Mercer County, attorney).

The opinion of the Court was delivered by

HALL, J. This public assistance case arose as the result of a reduction in the monthly amount paid by the Mercer

County Welfare Board for the subsistence of respondent and her child under the Aid to Families with Dependent Children program (ADC), a program authorized and partly financed by the federal government. 42 *U. S. C. A.* § 601 *et seq.; N. J. S. A.* 44:10–1 *et seq.; see Motyka v. McCorkle,* 58 *N. J.* 165, 168–169 (1971). The reduction came about because of the entry into the household, previously consisting only of the two recipients, of a third person not eligible for such assistance.

The reduced amount was mandated by the regulations of the state Division of Public Welfare (Division) which specify, in a tabular schedule of dollar amounts, a lower *per capita* standard of need for eligible members of a household when that household consists of both eligible and non-eligible persons, either at the time of initial eligibility or by reason of later changes in the household makeup, than when it is comprised only of eligible persons, *N. J. A. C.* 10:82–2.3, Schedule I; Division Financial Assistance Manual § 115.[1] In New Jersey where benefits are paid to the full extent of the appropriate standard of need figure, that figure, less any income and resources actually available to the eligible recipients, determines the amount of the assistance, which is paid in the form of a flat grant.

In this case, when the household was composed only of respondent and her child, the monthly payment for each of the two eligibles according to the schedule was $107, or a total of $214; after the household was enlarged to three by the addition of the non-eligible person, the schedule called for a reduction of the *per capita* payment for the mother and

---

[1]The schedule applies not only to the ADC program, but as well to the similarly financed Old Age Assistance (OAA), Assistance for the Totally and Permanently. Disabled (DA) and Assistance for the Blind (AB) programs, *N. J. A. C.* 10:82–2.2, so our conclusion has application to those programs as well.

child to $94, or a total of $188.[2] Respondent asserted that she had no income and received no financial contribution from the third person. This was not controverted, so we consider it established that the third person neither paid his own share of the household expenses nor contributed anything to those of respondent and her child.

On administrative review, the Director of the Division upheld the reduction of assistance on the thesis that the schedule applies without regard to the financial circumstances of the non-eligible member of the household and whether or not he contributed to the support of the eligible recipients. On appeal to the Appellate Division, respondent challenged the validity of the reduced assistance called for by the schedule as applied to her as being violative of the federal enabling legislation, i. e., the Social Security Act and the regulations of the Department of Health, Education and Welfare (HEW) promulgated thereunder, as well as violative of the equal protection and due process clauses of the federal constitution. That tribunal reversed the agency decision and restored the monthly assistance to the original amount, holding that the schedule, "as applied to the facts of this case," is inconsistent with the Social Security Act and the federal regulations. 124 N. J. Super. 139 (1973). We granted appellant's petition for certification. 63 N. J. 554 (1973).

While we agree with the conclusion reached by the Appellate Division, we think its holding should be clarified in view of the broad importance of the underlying issue involved.

█ Although state participation in a federally supported categorical assistance program, such as ADC, is voluntary, a state choosing to participate must comply with the terms of the federal legislation and regulations promulgated by HEW and must secure HEW approval of its plan for implementa-

---

[2]While the person joining respondent's household was her paramour, the case does not turn on that fact. The schedule calls for a lower standard of need and benefits no matter what the relationship to the recipients of the non-eligible household member.

tion of the program. A state plan must "[s]pecify a state-wide standard, expressed in money amounts, to be used in determining (a) the need of applicants and recipients and (b) the amount of the assistance payment." 45 *CFR* 233.20 (a)(2). The standard of need is a *per capita* money amount considered by the state to be sufficient to finance the purchase of those goods and services — food, clothing, shelter and the like — which are essential for minimal physical health and safety. It is used to measure who is eligible for benefits and in New Jersey, as we have said, also represents the benefits paid. While states are free to fix their own standards of need and their own level of benefits, the federal regulations require that state plans must provide "that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis * * *," 45 *CFR* 233.20(a)(1). While a state shall "take into consideration any other income or resources of any child or relative claiming aid * * *," 42 *U. S. C. A.* § 602(a)(7), "in establishing financial eligibilty and the amount of the assistance payment: * * * (c) only such net income as is actually available [to the recipient] for current use on a regular basis will be considered, and only currently available resources will be considered * * *," 45 *CFR* 233.20(a)(3)(ii). See generally *King v. Smith,* 392 *U. S.* 309, 88 S. Ct. 2128, 20 *L. Ed. 2d* 1118 (1968); *Rosado v. Wyman,* 397 *U. S.* 397, 90 S. Ct. 1207, 25 *L. Ed. 2d* 442 (1970); *Dandridge v. Williams,* 397 *U. S.* 471, 90 S. Ct. 1153, 25 *L. Ed. 2d* 491 (1970); *Lewis v. Martin,* 397 *U. S.* 552, 90 S. Ct. 1282, 25 *L. Ed. 2d* 561 (1970); *Jefferson v. Hackney,* 406 *U. S.* 535, 92 S. Ct. 1724, 32 *L. Ed. 2d* 285 (1972); *Motyka v. McCorkle, supra* (58 *N. J.* 165).

The state's theory to support the lower *per capita* standard of need and benefits prescribed in the schedule when the household is composed of eligible and non-eligible individuals rather than entirely of eligibles is that some so-called "economies of scale" come about merely by reason of the presence in the household of non-eligible individuals. While it is un-

doubtedly true, and so it can be validly assumed, that certain components of the total living costs of a household — as for example, rent, utilities and other items going into the cost of the same shelter — remain constant even though the number of persons in the household is increased, and consequently the *per capita* cost is lower, this is not because the additional persons in the household are non-eligibles. Rather it is due simply to the presence of additional persons in the household regardless of their status or relationship. Thus the schedule provides for lower *per capita* benefits in large households composed entirely of eligibles.

The real thesis behind lowered benefits when the household comprises eligibles and non-eligibles, as the Division concedes in its petition for certification, is in effect an irrebuttable presumption that the non-eligibles are paying their share of the total household expenses (as distinguished from contributing to the recipients' share) out of their income and resources from other assistance programs (see *N. J. A. C.* 10 :82–5.4(c)), employment wages or otherwise. The United States Supreme Court has long since held, in *King, supra* (392 *U. S.* 309, 88 S. Ct. 2128, 20 *L. Ed. 2d* 1118), and *Lewis, supra* (397 *U. S.* 552, 90 S. Ct. 1282, 25 *L. Ed. 2d* 561), that a state may not, by statute or regulation, conclusively presume that a "man in the house" or other non-eligible member of the household is bearing his share of the household expenses or contributing to the living costs of the welfare recipients so as to permit the reduction of benefits to them. To do so when that is not the fact, as in this case, means that the cost of living remains the same for the assistance recipients as when they alone comprised the household, but the benefits received are less and not enough to meet it. Consequently the dependent child—the primary object of the program—suffers. While the state has a legitimate interest in doing its utmost to see that assistance payments are not diverted from the intended needy recipients to the support of non-eligibles and is free to determine its own standard of need —the foundation of its argument here—such cannot be ac-

complished by arbitrary means resulting in unjustified reduction of subsistence to the child. This would amount to a determination of need, and therefore the amount of assistance, upon an inequitable foundation contrary to the requirement of the federal regulation "that the determination of need * * * be made on an objective and equitable basis * * *." 45 *CFR* 233.20(a)(1).

This holding of the United States Supreme Court is, of course, binding on New Jersey and means that it cannot reduce welfare benefits unless the fact is established that the non-eligible member of the household is paying his share of the household expenses. As applied by the Division in this case, New Jersey's schedule of reduced payments is, therefore, as the Appellate Division held, in violation of federal regulations.

But New Jersey is not entirely powerless. We think it may validly say that there is a presumption that a non-eligible member of the household is paying his share of the household expenses, thereby permitting the *per capita* reduction of need and benefits, but that the presumption is rebuttable, with the burden of coming forward and establishing that he is not so paying on the welfare recipient.

The presumption has a reasonable basis. The schedule itself is neutral and does not compel the Division's position that it is irrebuttable, but rather on its face permits an interpretation of rebuttability. Such a view merely shifts the burden of coming forward and of proof to the applicants or recipients who are in possession of the facts, rather than placing it upon the welfare authorities who are comparative strangers to the whole household situation and would otherwise be required to make a full field investigation in every case. That such an interpretation is of great practical consequence in the efficient and proper administration of public assistance, a factor not to be overlooked, is amply demonstrated by the single fact that the Division estimates that more than 47,900 families out of 157,867 families receiving assistance in this state are composed of recipients and non-recipients (non-

eligibles). The obligation, of an original applicant for assistance or of a recipient when the addition of a non-eligible to the household occurs and a reduction in assistance is proposed, to come forward with the facts is not an undue one. The Division will, of course, have to provide a simple and expeditious procedure for the presentation and determination of a claim that a non-eligible member of the household is not paying his share of the expenses. When the supporting facts are presented, the welfare authorities can make such check thereof as is desired and promptly reach a decision as to whether the claim is true.

While our conclusion has not been directly passed upon by the United States Supreme Court, we believe it does not clash with the rationale of *King v. Smith, supra* (392 *U. S.* 309, 88 S. Ct. 2128, 29 *L. Ed. 2d* 1118) and subsequent cases in that tribunal. Judicial authority in support of it is found, however, in lower federal court cases. We refer particularly to the well-reasoned opinion in *Mothers and Childrens Rights Organization, Inc. v. Stanton,* 371 F. Supp. 298 (N. D. Ind., 1973). The case is on all fours with the one before us and the court reached the same conclusion we do. To the same effect, but dealing with another categorical public assistance program, is *Owens v. Parham,* 350 *F. Supp.* 598 (N. D. Ga. 1972).[3] An apt summary sentence in *Mothers* may well be quoted:

As a rebuttable presumption, the chart and regulations [akin to the New Jersey schedule involved here] reconcile the federal purposes in the AFDC [ADC] program and thus are objective and equitable: The state avoids paying funds not necessary under its definition of need; administrative efficiency is furthered; the welfare budget is protected for other needy recipients; and assistance groups living with nonrecipients not in fact sharing household expenses are protected by their right to rebut the assumed sharing of expenses. (p. 304).

---

[3]Compare *Jenkins v. Georges,* 312 *F. Supp.* 289 (W. D. Pa. 1969), and *Hurley v. Van Lare,* 365 *F. Supp.* 186 (S. D. N. Y. 1973), in which similar state schedules and regulations were struck down as

Since the case before us is thus disposed of on statutory grounds, we, like the Appellate Division, need not consider any constitutional contentions of appellant.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Acting Chief Justice JACOBS, Justices HALL, SULLIVAN and PASHMAN and Judges CONFORD and COLLESTER—6.

*For reversal* — None.

violative of the federal statute and regulations on the basis of an irrebuttable presumption of a non-eligible paying his share of the household expenses. These decisions did not consider the matter of the validity of a rebuttable presumption.