497 F.2d 1208
 Annie TAYLOR, Individually and on behalf of her minor,
dependent child, Margaret Taylor, et al., Appellees,
v.
Abe LAVINE, Individually and in his capacity as Commissioner
of the New YorkState Department of Social Services, and
James M. Shuart, Individually, and inhis capacity as
Commissioner of the Nassau County Department of
SocialServices,Appellants.
Rose HURLEY, Individually and on behalf of her minor
children, Doreen Hurley,et al., Appellees,
v.
Barry VAN LARE, Individually and in his capacity as Acting
Commissioner of theState of New York, et al., Appellants.
 Nos. 669, 701, Dockets 73-2731, 73-2671.
 United States Court of Appeals, Second Circuit.
 Argued Dec. 21, 1973.
Decided May 14, 1974.
 
 Martin A. Schwartz, The Legal Aid Society of Westchester County, White Plains, N.Y. (Leonard S. Clark, Nassau County Law Services Committee, Inc., Hempstead, N.Y., on the brief; Lawrence S. Kahn, The Legal Aid Society of Westchester County, White Plains, N.Y., of counsel), for appellees.
 Judith A. Gordon, Asst. Atty. Gen. of the State of New York (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief, Constance M. Margolin, Asst. Atty. Gen., of counsel), for appellants.
 Before FRIENDLY, HAYS and OAKES, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 This court is again called upon to pass on a challenge to New York's administration of its program for state Aid to Families with Dependent Children (AFDC).
 
 
 2
 The federal AFDC program found in sections 401 to 444 of the Social Security Act of 1935, as amended, 42 U.S.C. 601-644 (1970), provides financial aid to states on a matching funds basis to assist the 'needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent . . ..' 42 U.S.C. 606(a) (1970). Each state wishing to qualify for sums appropriated by Congress must submit a plan for 'aid and services to needy families with children,' 42 U.S.C. 601 (1970). The plan must contain each provision on the list set forth in section 402(a) of the Social Security Act and must be approved by the Secretary of Health, Education and Welfare. 42 U.S.C. 602(b) (1970). Among the requirements found in section 402(a) are that the state plan furnish aid 'with reasonable promptness to all eligible individuals,' 42 U.S.C. 602(a)(10) (1970), and that the state agency in determining need 'take into consideration any other income and resources of any child or relative claiming aid to families with dependent children.' 42 U.S.C. 602(a)(7) (1973). New York has submitted such a plan and from time to time amended it. The plan and amendments have been approved by the Secretary.
 
 
 3
 Among the New York regulations under which AFDC funds are distributed are 18 N.Y.C.R.R. 352.30(d), which reduces the maximum shelter allowance available to a recipient family pro rata to the extent that there are noneligible lodgers living in the household, and 18 N.Y.C.R.R. 352.31(a)(3)(iv), which treats a man living with a female recipient but not married to her as a 'lodger.' Plaintiffs Hurley, Taylor and Otey challenged these regulations in separate actions in two federal district courts as creating a conclusive presumption offensive to due process, as denying them the equal protection of the laws, and as invading their rights to privacy and free association. They also claimed that the regulations are in effect 'substitute parent' regulations forbidden for state plans by section 406(a) of the Social Security Act and 45 C.F.R. 233.90(a) (1973). The single district judge upheld the statutory claims and thus found it unnecessary to consider whether a court of three judges should be convened under 28 U.S.C. 2281.
 
 
 4
 The New York regulations in question provide as follows:
 
 
 5
 'When a female applicant or recipient is living with a man to whom she is not married . . . his available income and resources shall be applied in accordance with the following: . . ..
 
 
 6
 '(iv) When the man is unwilling to assume responsibility for the woman or her children, and there are no children of which he is the acknowledged or adjudicated father, he shall be treated as a lodger in accordance with section 352.30(d).'[1] 18 N.Y.C.R.R. 352.31(a)(3).
 
 
 7
 'A non-legally responsible relative or unrelated person in the household, who is not applying for nor receiving public assistance shall not be included in the budget and shall be deemed to be a lodger or boarding lodger . . .. In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for heating, shall be a pro rata share of the regular shelter allowance.' 18 N.Y.C.R.R. 352.30(d).
 
 
 8
 45 C.F.R. 233.90(a) (1973) provides as follows:
 
 
 9
 'A State plan under title IV-A of the Social Security Act (relating to the AFDC program) must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. In estanblishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.'
 
 
 10
 The district court in each of the two cases found the New York regulations offensive to the Social Security Act and 45 C.F.R. 233.90(a), and accordingly granted declaratory and injunctive relief. We reverse and remand for the convening of a three-judge court to consider the constitutional issues raised by the appellees.
 
 I.
 
 11
 The facts in both cases are uncontroverted.
 
 
 12
 A. Hurley v. Van Lare.
 
 
 13
 Appellee Rose Hurley lives with her three dependent children, aged ten, five and five years, in Mount Vernon, New York. She and her children have been living apart from her husband since 1967; she has had no contact with him since 1967 and does not know where he is. The Hurleys receive public assistance under the New York AFDC plan as it is administered by the Westchester County Department of Social Services.
 
 
 14
 During the four-month period from November 1970 to February 1971, an unrelated male friend of Mrs. Hurley stayed with her and her children at their Mount Vernon residence. The friend was under no legal obligation to support the Hurleys, and in fact he made no contribution to their support. His presence did not increase the amount of rent that Hurley was obliged to pay, $150.00 per month. During the same four-month period, the Westchester Department of Social Services deducted $35 per month from Hurley's recurring AFDC grant, presumably in accordance with 18 N.Y.C.R.R. 352.30(d).
 
 
 15
 On November 12, 1970, Hurley requested a 'Fair Hearing,' a proceeding provided for in 18 N.Y.C.R.R. 358.1-358.27, to review the reduction of her AFDC grant. A hearing was held on March 22, 1971, and on September 20, 1971, appellant Van Lare, the Acting State Commissioner of the Department of Social Services, rendered a 'Decision after Fair Hearing' in which he found the facts to be substantially as stated above. He upheld the determination of the Westchester County Department that Hurley's grant should be reduced, but diminished the amount of the reduction to $30.00.
 
 
 16
 Thereafter, on August 11, 1972, Hurley brought an action in the District Court for the Southern District of New York on behalf of herself and all others similarly affected by sections 352.31(a)(3)(iv) and 352.30(d) to secure declaratory relief, an injunction against enforcement of the regulations, and judgment for retroactive AFDC payments.
 
 
 17
 Defendants Van Lare and Lavine, appellants here, are respectively Acting Commissioner and Commissioner of the Department of Social Services of New York, and defendant Kurtis is Commission of Social Service for Westchester County.
 
 
 18
 Hurley based her demand for an injunction on the theory that she has not associated with her friend out of fear that her public assistance grant will be reduced, as it was in November 1970, by the enforcement of sections 352.31(a) (3)(iv) and 352.30(d). She contended that the regulations are offensive to the Due Process and Equal Protection Clauses of the Fourteenth Amendment, that they are in violation of her rights of privacy and free association, and that they are invalid under section 402 and 406 of the Social Security Act, 42 U.S.C. 602, 606 (1970), and 45 C.F.R. 233.90(a).
 
 
 19
 The district court did not convene a three-judge court under 28 U.S.C. 2284 (1970) to consider the merits of the constitutional claims. See 28 U.S.C. 2281 (1970). But the district court determined that at least the Due Process claim is sufficiently substantial to vest the court with subject matter jurisdiction under 28 U.S.C. 1343(3) (1970), and that under the doctrine of pendent subject matter jurisdiction it had the power to decide the statutory claim.
 
 
 20
 On Hurley's motion for summary judgment, the district court held that the New York regulations violate section 406 of the Social Security Act and 45 C.F.R. 233.90(a), as interpreted by the Supreme Court in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970):
 
 
 21
 'The inevitable result of these regulations is to reduce, perhaps drastically, the stipend for those who are eligible. In the case of a mother with one child, for example, the presence of a non-contributing male lodger would reduce the rental stipend by 33 1/3%. This devastating reduction means in practice that rental payments must be met out of that portion of the welfare stipend allotted for food and clothing.
 
 
 22
 'The (New York) regulations thus conflict directly with 233.90 . . .. Despite the defendants' protestations to the contrary, a pro rata reduction does indeed assume that the male lodger will pay his own way, whether or not he actually does. That is precisely the assumption found impermissible in King and Lewis.' 365 F.Supp. at 186.
 
 
 23
 In granting summary judgment, the district court gave declaratory relief and enjoined appellants from enforcing the challenged regulations, but denied Hurley's claim for retroactive welfare payments.[2] The district court also granted Hurley's motion that the action be designated a class action under Rule 23(c).
 
 
 24
 The appellants have appealed the order granting the summary judgment and class action motions, and Hurley has appealed the denial of retroactive benefits.
 
 
 25
 B. Taylor and Otey v. Lavine.
 
 
 26
 Annie Taylor, her six-year-old child, and her sister, Virginia Taylor, live together in Freeport, Long Island. Annie Taylor and her child receive public assistance under the New York AFDC program as it is administered by the Nassau County Department of Social Services. Prior to January 1, 1973, the sister had received aid under the state home relief program, but after that date she received no public assistance. The sister is under no legal obligation to support Annie Taylor or her child, and she in fact makes no contribution to Taylor's $180 monthly rental.
 
 
 27
 Prior to January 1, 1973, the three Taylors were receiving $155 per month in shelter allowance, the maximum allowance available for a household of three persons according to a schedule issued by the Nassau County Department of Social Services. When the sister was dropped from the home relief program, Annie Taylor's shelter allowance was reduced to $110.00, two-thirds of $155, under 18 N.Y.C.R.R. 352.30(d). Taylor requested the maximum shelter allowance for two persons, $145.00. Her request was denied. She demanded and received a 'Fair Hearing' at which facts were found substantially in accordance with the foregoing statement. Because the diminished shelter allowance was not enough to pay her rent, Taylor fell behind in her rental payments and was eventually the subject of an eviction order.[3]
 
 
 28
 Plaintiff Charlotte Otey and her thirteen-year-old son, like the Taylors, reside in Freeport, and are recipients of AFDC aid. When Otey's 23-year-old son, not a public assistance recipient, moved into the Otey apartment in October, 1972, Otey's shelter allowance was reduced from $145.00, the maximum allowance for two people, to $96.65, two-thirds of the maximum. Otey demanded an opportunity for a 'Fair Hearing,' which was granted, but she failed to appear.
 
 
 29
 Taylor and Otey brought an action in the Eastern District of New York, making claims similar to those asserted in Hurley v. Van Lare, and seeking similar relief, except that they did not contest the validity of 18 N.Y.C.R.R. 352.31(a)(3)(iv). Defendant Shuart is Commissioner of the Department of Social Services of Nassau County. The district court granted the plaintiff's motion for summary judgment, and gave the declaratory and injunctive relief sought, adopting the Hurley district court's 'reasoning on class action status, jurisdiction, inconsistency of the state regulation and injunctive relief . . ..' It denied retroactive AFDC payments.
 
 
 30
 Lavine and Shuart appeal from the summary judgment.
 
 II.
 
 31
 Without passing on the constitutional claims, we agree they are sufficiently substantial to support jurisdiction under the liberal test the Supreme Court has recently announced in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Where the constitutional claim is sufficient to vest the district court with jurisdiction, it is proper for a single judge to decide the statutory question under pendent jurisdiction, Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and, if he sustains it, to defer requesting a three-judge court under 28 U.S.C. 2281, pending review.
 
 
 32
 Hurley, Taylor and Otey base their claim that the New York regulations are contrary to federal law on two Supreme Court decisions: King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). On careful consideration of these cases, it is clear that neither justifies the district courts' interference with New York's program for distributing AFDC grants.
 
 
 33
 In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1970), Alabama AFDC recipients brought an action to enjoin enforcement of a state regulation which provided that 'an 'able-bodied man, married or single, is considered a substitute father of all the children of the applicant . . . mother' . . . if 'he lives in the home with the child's natural or adoptive mother for the purpose of cohabitation." 392 U.S. at 313-314. The effect of the regulation under Alabama law was to remove the family from the category of aid recipients created by section 406(a) of the Social Security Act: because of the presence of the 'substitute father,' Alabama presumed that there was no 'continued absence . . . of a parent.' 42 U.S.C. 606(a) (1970). The Supreme Court held that the Alabama rule 'defines 'parent' in a manner that is inconsistent with 406(a) of the Social Security Act.' 392 U.S. at 333. Reasoning that the purpose of the federal AFDC program is to protect and benefit needy and dependent children, the Court said that 'the only kind of 'parent,' under 406(a) whose presence in the home would provide adequate economic protection for a dependent child is one who is legally obligated to support him.' 392 U.S. at 332.
 
 
 34
 Alabama asserted that two state governmental interests were advanced by the substitute father rule: the state's interest in discouraging meretricious sexual relationships, and the state's interest in allocating its share of AFDC funds according to the needs of its citizens. As to the first interest, the Supreme Court allowed that states generally have broad discretion in regulating sexual behavior outside of marriage, but held after examining the legislative history of the Social Security Act that Congress did not intend section 406(a) to be a lever in the hands of state legislators to compel compliance with local standards of moral conduct. 392 U.S. at 320-327. As to the second interest, the Court granted that Alabama had the power to set the level of benefits and standard of need under its plan, but held that in determining need it must account for the actual resources of the child. 392 U.S. at 332.
 
 
 35
 In one sense, the King holding does not bear directly on the instant case. Unlike the Alabama substitute father regulation, the New York regulation does not presume to define 'parent' artificially to deny eligibility to the family housing a lodger. The meaning of the term 'parent' as it is used in section 406(a) is therefore not directly at issue. The New York regulation merely determines the level of payment to the eligible family on the basis of the presence or absence of a lodger in the recipient household. This method of computing shelter allowance is permitted under the King v. Smith rationale if it is not designed to vindicate a moral interest unrelated to the need of the family, and if it realistically determines the level of need. As to the first point, it is clear that there is not the punitive aspect to the New York regulation that there was in the Alabama substitute father regulation. This is not a case of New York trying to impose 'middle class morality' on the welfare recipient, using AFDC as an instrument of social control. This fact is illustrated by the Otey and Taylor cases, cases in which the shelter allowances were reduced because of the presence of persons other than the mother's paramour in the recipient household. The appellees' claim that sections 352.30(d) and 352.31(a)(3)(iv) offend the principle in King v. Smith thus stands or falls on their assertion that the regulations create a conclusive presumption of lodger contribution to the AFDC unit's rental expense, and that this presumption does not account for the actual needs of the AFDC-eligible family.
 
 
 36
 Under the long-standing administrative interpretation of section 402(a)(7) of the Social Security Act, only real sources of income may be considered by the state in determining need. The most recent embodiment of that interpretation, section 233.90(a) of the Health, Education and Welfare regulations governing the content of state plans, clearly states that the presence of any individual except a person legally obliged to support the child 'is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State.' Any doubt remaining on the issue was removed by the Supreme Court's holding in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), that section 233.90(a) precluded California from attributing income to an AFDC-eligible child from a non-adopting stepfather who had no duty of support under state law.
 
 
 37
 Although we agree that federal law prohibits a conclusive presumption of support, we do not agree that the New York regulations here in question imply such a presumption. The regulations imply only that the lodger's presence evidences the recipient family's diminished need for housing space. Section 352.30(d) does not attribute a non-existent obligation of support to the lodger, nor does it deny the AFDC-recipient children or caretaker their share of the actual housing expenditures. Prorating housing costs between the recipient and non-recipient simply reflects the separability of the need of the AFDC-eligible family members from the needs of persons who have not demonstrated their eligibility for public assistance. Indeed, if a section 352.30(d) lodger can separately demonstrate his eligibility for public aid, the AFDC shelter allowance is increased to include his share, a principle illustrated by the Taylor case. See note 3, supra.
 
 
 38
 Appellees have attempted to justify their position by incanting the words 'conclusive presumption of contribution.' But it is clear that the New York regulations are based on the fair inference from the presence of the lodger in the household that the AFDC-recipient family actually needs less space for its own use than it is paying rent for. Appellees do not dispute that in the event an eligible family chooses to live as lodgers in a portion of a non-eligible person's house, the state may pay only the eligible family's pro rata share of the total rent, regardless of contribution, without offending federal law: the recipient family would be due shelter allowance only for that portion of the house they were actually using. The outcome is no different when the AFDC family uses a portion of its own premises to house a non-eligible person, whether or not that person contributes to the rent.
 
 
 39
 Prorating housing expenses among recipients and nonrecipients of public aid accounts for the economies of scale that are realized when individuals live in groups; per-individual housing costs decrease as the number of individuals living together increases. In the Hurley case, for example, Hurley, her three children, and her lodger can live at a lower per capita housing cost than can Hurley and her children alone. Thus, the New York scheme does not attribute a false duty of support or a false source of income, but rather accounts for the actual cost of housing to an AFDC-recipient family.[4]
 
 
 40
 The New York regulations have a more limited objective than those held invalid in Kings and Lewis. The objective of section 352.30(d) is to insure that all of the beneficiaries of an AFDC grant are entitled to enjoy it. Unlike the Alabama and California regulations, the New York regulations do not cut off all aid to families having non-eligible persons in their households. They merely prevent non-eligible persons from benefitting from free living space.[5] New York's interest in preventing non-eligible persons from sharing in AFDC benefits is coextensive with the federal interest in allocating AFDC appropriations only to eligible persons. Section 402(a)(10) of the Social Security Act, 42 U.S.C. 602(a)(10) (1970), states that aid must be furnished 'with reasonable promptness to all eligible individuals,' language necessarily implying that aid should not be furnished to non-eligible individuals.
 
 
 41
 Reversed and remanded.
 
 OAKES, Circuit Judge (dissenting):
 
 42
 The majority decision today reverses two distinguished federal trial judges and reaches a conclusion quite contrary to that of an Appellate Division of the New York Supreme Court, and antithetical to decisions of the Supreme Court of New Jersey, and of federal district courts in Massachusetts, Indiana and Georgia.[1] It also disregards the mandates of Supreme Court decisions from King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), to Shea v. Vialpando, U.S. , 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). As such, today's majority opinion stands nakedly-- and thankfully-- alone, for the majority permits a state to deprive the dependent children of a needy family of a portion of their allowances for shelter because some person-- whether an unemployed adult child, a disabled (but ineligible) sister, or a male 'friend'-- resides in the same household. The result I think flies in the teeth of the federal law and Supreme Court decisions, disregards economic realities and is quite unjust to the needy children otherwise entitled to assistance.
 
 
 43
 The majority today finds two challenged New York regulations in conformity with the federal statute, 42 U.S.C. 602(a)(7),1A and regulation, 45 C.F.R. 233.90(a) (1973). / 2/ The first challenged regulation, 18 NYCRR 352.31(a)(3) (iv), /3/ /3/ is New York's administrative soft shoe around King v. Smith, supra. New York defines a man who lives with a woman to whom he is not married and for whom he does not assume financial responsibility as a 'lodger.' In King, Alabama had defined a man who engaged in the same conduct a 'parent.' In King the result of that definition was to disqualify the AFDC child from receiving any benefits; in the present case the result of New York's definition of the man as a 'lodger' is also to disqualify the AFDC child, although only from a portion of his benefits. Thus by New York's cleverness in changing a 'parent' to a 'lodger,' it has managed, with the aid of today's decision, to accomplish what a number of other states have not-- the reduction in the AFDC child's benefits on the basis of the mother's living arrangements. See e.g., Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); King v. Smith, supra; Rosen v. Hursh, 464 F.2d 731 (8th Cir. 1972); Reyna v. Vowell, 470 F.2d 494 (5th Cir. 1972); Boucher v. Minter, 349 F.Supp. 1240 (D.Mass.1972) (three-judge court); Owens v. Parham, 350 F.Supp. 598 (N.D.Ga.1972) (three-judge court); Gaither v. Sterrett, 346 F.Supp. 1095 (N.D.Ind.) (three-judge court), aff'd, 409 U.S. 1070, 93 S.Ct. 688, 34 L.Ed.2d 660 (1972). At least one state has been frustrated twice, see X v. McCorkle, 333 F.Supp. 1109 (D.N.J.1970), aff'd sub nom. Engleman v. Amos, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971); Hausman v. Department of Institutions and Agencies, 64 N.J. 203, 314 A.2d 362 (1974). And, interestingly, the majority, by not striking down this regulation, runs directly counter to its own assessment of what King stands for-- 'that Congress did not intend (AFDC) to be a lever in the hands of state legislators to compel compliance with local standards of moral conduct.'
 
 
 44
 This determination may not be so harsh as it sounds, however, for it seems plain enough that the three-judge court should find this regulation unconstitutional. The definition of a 'lodger' as a man who lives with a woman to whom he is not married, while not defining a woman who lives with a man as such, is so patently a violation of equal protection on the basis of sex, see Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), that, whether sex is regarded as a 'suspect' classification or not, the State is unlikely to be able to find a justification for the classification here.
 
 
 45
 The other regulation under challenge here, 18 NYCRR 352.30(d),[4] is the more significant-- both because its cleverness makes it more insidious and because, even absent the other regulation defining 'lodger,' this regulation also permits the reduction of recipient children's benefits as a result of whom the mother allows to live in the house, the apartment or tenement as the case may be. This regulation provides that if a lodger pays $15 a month or more, that amount will be considered income to the recipient family.[5] If, however, the lodger pays nothing, or less than $15, then a pro rata share of the shelter allowance, including fuel for heating, will be deducted from the family's benefits.[6] This is the regulation which resulted in plaintiff Taylor and her six-year-old child receiving an eviction notice because a reduced shelter allowance made it impossible to meet the rent. Plaintiff Taylor's 'lodger'? Her disabled sister. This is the regulation which requires plaintiff Otey to throw her unemployed, ineligible-for-welfare, 23-year old son out on the street, because if he lives in the home their shelter allowance will not be sufficient to pay the rent, while if he moves out the State will pay the full amount.[7]
 
 
 46
 The majority concedes that if this regulation conclusively presumed the availability of income from the lodger and reduced the AFDC child's benefits on that basis, then the regulation would be unlawful under the HEW regulation. Rather than find such a presumption inherent in the regulation, however, the majority advances two independent bases or objectives of the regulation as compatible with the federal law and regulation. Each of them is in my view wholly lacking in sufficiency.
 
 
 47
 The first allowable 'basis' for the regulation found by the majority is 'the fair inference from the presence of the lodger in the household that the AFDC-recipient family actually needs less space for its own use than it is paying rent for.' While 'it is clear' to the majority that this inference is the basis of the regulation, this was not the basis claimed by the State either in the court below or in this court.[8] Rather this 'basis' for the regulation lies in my colleagues' fertile imagination. If this case were here now upon an equal protection challenge, then the majority might properly try to find a reasonable basis for the classification. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). But this is not an equal protection challenge. It is a challenge under a federal statute and regulation which through several years and many cases of judicial scrutiny have taken on substantive requirements well beyond those of the Equal Protection Clause. Primary among those requirements is that a child's resources are to be measured in actuality, not on the basis of a presumption. See, e.g., Shea v. Vialpando, U.S. , , 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). The majority acknowledges the federal prohibition of a presumption of support. Support, however, is just one type of resource affecting a family's need; the amount of available living space is another. Yet in place of a presumption of support, the majority substitutes a conclusive presumption that whenever there is a 'lodger' the family has more space than it needs. As such, it may well be contrary to fact: the order brother may be sharing a single bed with a younger one; the disabled sister may be sleeping on the couch.
 
 
 48
 Labeling the New York regulation a 'fair inference' does not change its conclusive nature where a showing contrary to the inference will not affect the shelter allowance reduction; here the only fact considered by the State in the fair hearing is the presence or absence of a lodger, not the amount of space in the apartment. If the regulation provided only for a rebuttable presumption, whether of payments by the lodger or of excess space, there might well be a different question.[9] Thus, the majority, in upholding the regulation on this basis, creates a conclusive presumption regarding the child's needs which has the effect of reducing the AFDC child's benefits. This directly contravenes the HEW regulation which provides:
 
 
 49
 (A state plan must) provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis . . ..
 
 
 50
 45 C.F.R. 233.20(a)(1). The majority's conclusive presumption of the child's need, or lack of it, also violates what seems to me the clear import of Shea v. Vialpando, supra; King v. Smith, supra; Lewis v. Martin, supra; and HEW regulation, 45 C.F.R. 233.90(a), that a family's resources (be they income or amount of living space) be determined by what it actually has or receives, not by presumptions or inferences.[10] If such a presumption be the basis for the New York regulation,[11] it is in violation of federal law, and the regulation must fall.[12]
 
 
 51
 An 'objective' of the New York regulation, according to the majority, 'is to insure that all of the beneficiaries of an AFDC grant are entitled to enjoy it.' Clearly the State is not required, or for that matter allowed, to extend AFDC benefits to ineligible persons. The question, however, is whether this regulation serves to keep AFDC benefits from the ineligible, or whether instead it unlawfully withholds benefits from those rightfully entitled to it-- dependent children in need and their responsible families. The fallacy underlying the majority's view, and the argument of the State on this issue, is that the lodger is not a 'beneficiary' of the AFDC grant either in law or fact. The lodger is rather the beneficiary of the AFDC family's generosity, and more likely that of the AFDC children's mother. If a lodger is not present in the household, the family receives a rent allowance determined by the State to be proper for the family. If a lodger then is invited into the household, he would not receive any benefit from the AFDC grant, the entire amount of which the family is entitled to without him; he is rather a recipient of that charity which the family wishes to extend from its own resources.[13] He is there at the family's forbearance or pleasure and he has no right to remain. He receives nothing from the State, and when the family's shelter allowance is reduced, nothing is taken from him. He continues to live in the household at the pleasure of the family.
 
 
 52
 Clearly what the State is doing is not keeping welfare funds from the ineligible by this regulation.[14] Rather it seeks to punish the welfare family for using its own resources in a manner of which the Commissioner disapproves in advance in every case. Whether the Commissioner is attempting to enforce the 'middle class morality' mentioned by the majority, or just trying to save money any way he can, the federal statute and regulations, and the unanimous case law forbid the State from enforcing its predilections which are irrelevant to the welfare of the child[15] by depriving the eligible child of its needs. See, e.g., Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Lewis v. Martin, supra; King v. Smith, supra; Doe v. Ellis, 350 F.Supp. 375 (D.S.C.1972 (three-judge court); Saddler v. Winstead, 332 F.Supp. 130 (N.D.Miss.1971); Doe v. Schmidt, 330 F.Supp. 159 (E.D.Wis.1971) (three-judge court); Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969) (three-judge court), appeal dismissed, 396 U.S. 488, 90 S.Ct. 991, 25 L.Ed.2d 264 (1970). And that is exactly what is being done here.
 
 
 53
 To repeat, to reduce the shelter allowance of an AFDC family by virtue of the presence in the home of a non-paying lodger does not deprive the lodger of any benefits-- only the family which allows him to stay can do that-- but rather deprives the needy family, and especially the needy child who is the object of the AFDC program, of them.
 
 
 54
 If the State believes that the non-paying lodger should not get a 'free ride,' the State may legislate or proceed against the lodger, but should it be permitted to deprive the needy child? The State may attempt to obtain reimbursement from the lodger for the use of the family's resources,[16] but should it be able to punish the child because the head-of-household does not require the lodger to pay for his shelter? Cf. Doe v. Schmidt, supra; Doe v. Shapiro, supra.
 
 
 55
 There are only two other points made by the majority requiring passing mention. First, there is a suggestion that an 'economy of scale' operates in the sense that the per capita housing cost decreases when there is a lodger. It is nonsense, however, to say that the cost of housing to the recipient family decreases when there is a non-paying lodger. Moreover, an economy of scale does not reduce the total cost of anything, and yet here, where the recipient family is legally and factually responsible for the total rent bill, the State is providing a smaller total allowance although the lodger contributes nothing. An economy of scale would operate only if the lodger were presumed to pay his pro rata share. But such a presumption would be clearly unlawful, as the majority concedes and 45 C.F.R. 233.90(a) provides. The presence of a lodger is, finally, irrelevant to the rent the family pays. A certain rent is due and payable; if the State reduces the rent allowance, the difference will either be made up out of food budget-- literally out of the needy child's mouth-- or it will not be made up, resulting in a notice of eviction. Plaintiff Taylor with her eviction notice would surely laugh, although perhaps a little bitterly, at the majority's suggestion that by housing her destitute and disabled sister the family's 'actual cost of housing' was reduced.
 
 
 56
 Finally, in a footnote, the majority quotes from a letter from HEW in response to questions from the State. The suggestion of the footnote is that HEW has taken a position on the question before us. To the contrary, however, in that same letter HEW acknowledged that it approves both plans like New York's and those which grant full shelter allowance despite the presence of non-recipients in the household. In other words, HEW here, just as it did prior to King v. Smith, supra, has not resisted a state's attempt to evade its own regulations and the federal statutes. See also Shea v. Vialpando, U.S. at , n. 11, 94 S.Ct. 1746.
 
 
 57
 I would affirm the judgments below, because, as Judge Bauman, said,
 
 
 58
 the inevitable result of these regulations is to reduce, perhaps drastically, the stipend for those who are eligible. . . . This devastating reduction means in practice that rental payments must be met out of that portion of the welfare stipend allotted for food and clothing.
 
 
 59
 Hurley v. Van Lare, 365 F.Supp. 186, 195 (S.D.N.Y.1973). Because the regulation denies the eligible child his basic needs for no reason related to the purpose of the federal statute, it violates that statute and the implementing regulations.[17]
 
 
 
 [1]
 In the version of 18 N.Y.C.R.R. before the district courts, 18 N.Y.C.R.R. 352.31(a)(3)(iv) referred to section 352.30(c), rather than to section 352.30(d). The Hurley district court held that the reference was erroneous, that it should have been to section 352.30(d). 365 F.Supp. 186 at n. 1. Appellants, state officials entrusted with administering the regulation, did not contest that determination. The text of section 352.31(a)(3)(iv) was amended effective April 2. 1973, to refer to section 352.30(d)
 
 
 [2]
 The district courts properly denied retroactive payments, relying on our decision in Rothstein v. Wyman, 467 F.2d 226, 235 (2d Cir. 1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), which has recently been approved by the Supreme Court in Edelman v. Jorsan, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)
 
 
 [3]
 The eviction order was nullified when Taylor paid her overdue rent out of the proceeds of her April 1973 grant, a grant increased to the pre-January 1, 1973, level because of the fact that her sister began to receive aid under the joint federal-state Aid to the Disabled Program on March 14, 1973. On the basis of the limited record before us we do not decide whether Taylor's claim for declaratory and injunctive relief is moot. On remand, the district court should consider whether her claim presents a justiciable controversy. See Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)
 
 
 [4]
 In preparing for these appeals, the New York Department of Social Services addressed a letter to the Regional Attorney of the Social and Rehabilitation Service of the Department of Health, Education & Welfare containing a request for an opinion on the following question:
 'Is a state policy of prorating a shelter allowance so as to reflect the percentage of public assistance recipients residing in a household valid under 45 CFR 233.90?'
 The response of the Regional Commissioner of the Department was available a short time after these appeals were argued:
 '. . . HEW has permitted states to prorate shelter allowances to reflect the percentage of public assistance recipients in a household. Such a proration is not considered an assumption of income, but rather a recognition that per-individual costs decrease as the number of individuals living together increases.'
 
 
 [5]
 In battle v. Lavine, 44 A.D.2d 307, 354 N.Y.S.2d 680 (2d Dep't 1974), the Appellate Division held that the regulation prorating shelter allowance violated 45 C.F.R. 233.90. Solely on the authority of the district court's decision in Hurley v. Van Lare, it rejected the proposition that the purpose of the New York regulation is to prevent non-eligible persons from benefiting from shelter allowance payments. Since we reverse Hurley v. Van Lare, we do not give any weight to the Appellant Division's holding
 
 
 [1]
 Battle v. Lavine, App.Div., 354 N.Y.S.2d 680 (2d Dep't 1974). Contrary to the majority's suggestion, at note 5, the New York court's decision was not merely based on the authority of Hurley v. Van Lare. One would be surprised were a high court of the sovereign state of New York to determine the purpose of a state regulation 'solely on the authority of (a federal) court's decision.' Majority opinion at note 5. Rather Hurley v. Van Lare was simply cited for the proposition that the federal district court had reached one of the same conclusions as the Appellate Division-- that 'notwithstanding the (State's) protestations that their concern is that ineligibles not receive a rental stipend, the inevitable result of the State regulation under attack is to reduce, perhaps drastically, the stipend for those who are eligible.' App.Div., 354 N.Y.S.2d at 683. Other shelter allowance cases contrary to the majority decision include Hausman v. Department of Institutions and Agencies, 64 N.J. 202, 314 A.2d 362 (1974). See also Mothers and Childrens Rights Organization, Inc. v. Stanton, 371 F.Supp. 298 (N.D.Ind.1973); Owens v. Parham, 350 F.Supp. 598 (N.D.Ga.1972) (three-judge court); Boucher v. Minter, 349 F.Supp. 1240 (D.Mass.1972) (three-judge court), all of which are unmentioned by the majority opinion
 1A 42 U.S.C. 602 reads, in pertinent part:
 (a) A State plan for aid and services to needy families with children must . . .
 (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income.
 
 
 [2]
 45 C.F.R. 233.90 Factors specific to AFDC
 (a) State plan requirement. A State plan under title IV-A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'manin-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.
 
 
 [3]
 18 NYCRR 352.31(a)
 (3) When a female applicant or recipient is living with a man to whom she is not married, other than on an occasional or transient basis, his available income and resources shall be applied in accordance with the following:
 . . . . fe
 (iv) When the man is unwilling to assume responsibility for the woman or her children, and there are no children of which he is the acknowledged or adjudicated father, he shall be treated as a lodger in accordance with section 352.30(d).
 
 
 [4]
 18 NYCRR 352.30(d):
 A non-legally responsible relative or unrelated person in the household, who is not applying for nor receiving public assistance shall not be included in the budget and shall be deemed to be a lodger or boarding lodger. The amount which the lodger or boarding lodger pays shall be verified and treated as income to the family. For the lodger, the amount in excess of $15 per month shall be considered as income; for such boarding lodgers, the amount in excess of $60 per month shall be considered as income. In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for hearting, shall be a pro rata share of the regular shelter allowance.
 
 
 [5]
 This actual contribution, like all other income, will result in a reduction of the family's benefits under the theory that welfare will only provide that money necessary to bring a family up to its level of need. This section of the regulation is unchallenged and, in my view, comports entirely with the intent of the federal statute and regulations
 
 
 [6]
 Those on welfare are sure to learn quickly that they will maximize their benefits by claiming that they receive $15 a month from their lodger, resulting in only a $15 diminution of their shelter allowance. In this way they will lose only $15 of benefits, rather than a pro rata share, which normally would be more. Thus, in Hurley's case the pro rata reduction was $30, although she received no contribution from her male friend. In Taylor's case the pro rata reduction was $55, although she received no contribution from her sister. In Otey's case the pro rata reduction was $48.35 although she received no contribution from her son. One may wonder about the rationality of a system which deducts $55 from someone receiving no contribution, but only $15 from someone receiving a $15 contribution
 
 
 [7]
 Compare this result with the federal purpose 'to help maintain and strengthen family life,' 42 U.S.C. 601, and the federal requirement that states provide services 'for the purpose of preserving . . . the family . . ..' 42 U.S.C. 602(a)(13), 602(a)(14), 606(d). See Shea v. Vialpando, U.S. , , 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). See also Rodriguez v. Vowell, 472 F.2d 622, 626 (5th Cir.), cert. denied, 412 U.S. 944, 93 S.Ct. 2777, 37 L.Ed.2d 404 (1973)
 
 
 [8]
 It would indeed be hard to maintain that this is the basis for the rule, because as soon as the 'lodger' moves out, the full shelter allowance is restored. If the presence of the lodger demonstrated excess space, as maintain by the majority, then his moving out would not be a reason to resume full shelter payments
 
 
 [9]
 In Mothers and Childrens Rights Organization, Inc. v. Stanton, 371 F.Supp. 298 (N.D.Ind.1973), the court found regulations almost identical to New York State's in conflict with the federal law and regulations as applied. The court found that making a presumption of support, if rebuttable, was lawful, but if the presumption was irrebuttable in practice, then it was unlawful. Accord, Hausman v. Department of Institutions and Agencies, 64 N.J. 203, 314 A.2d 362 (1974). In Owens v. Parham, 350 F.Supp. 598 (N.D.Ga.1972) (three-judge court), the court also found a presumption in analytically identical regulations, upheld the regulations on their face, but found them unconstitutional as applied, because recipients whose shelter allowances were reduced as a result of non-eligibles residing in the household were not given an opportunity to rebut the presumption. The Supreme Court in Shea v. Vialpando, U.S. at , 94 S.Ct. 1746, suggested a similar solution in finding a uniform allowance for work-related expenses unlawful under the Act. The Court said that if there were provided an opportunity for individualized consideration where the allowance was not sufficient, then the allowance would not be unlawful
 
 
 [10]
 In Shea v. Vialpando, supra, the Court declared a Colorado uniform allowance for work-related expenses incompatible with the Social Security Act, saying:
 From the inception of the Act, Congress has sought to ensure that AFDC assistance is provided only to needy families, and that the amount of assistance actually paid is based on the amount needed in the individual case after other income and resources are considered. U.S. at , 94 S.Ct. at 1754.
 
 
 [11]
 New York's regulations requiring initial and continuing investigations into need and eligibility demonstrate both its general adherence to the rule of determining actual, individual needs and resources and the lack of necessity for a presumption regarding excess living space. The New York regulations deal in some detail with the investigations to be made both initially, 18 NYCRR 351.1-.6, and on a continuing basis, 18 NYCRR 351.20-.21. The actual resources are investigated in depth. 18 NYCRR 351.2(e). Among the facts to be determined by documents, personal observation, personal and collateral interviews and other means are the residence and family composition. Each member of the household is investigated as to age, relationship to other members, marital status, employment, and the like. 18 NYCRR 351.2(c). The place of residence must itself be specifically investigated and approved. 18 NYCRR 351.3. Every six months all variable factors of need must be reconsidered, re-evaluated, and verified. 18 NYCRR 351.21(b)(2). In short, it is absurd to create an administrative presumption concerning resources of income or space, when the actual information is on file and subject to immediate verification. Let it be remembered that New York justified its 'home visits' in Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), by its claimed need to gather this very type of information
 
 
 [12]
 This conclusive presumption, which the majority styles a fair inference, is in any case in violation of due process. See Owens v. Parham, supra. See also United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932)
 
 
 [13]
 To carry out the majority's analysis, when the welfare mother puts a dollar bill in the collection plate on Sunday, the church is 'sharing in AFDC benefits,' and presumably the majority would uphold a state regulation which provided for withholding from the AFDC grant a sum equal to any donations to charity. The supposed justification remains the same-- the State provides AFDC grants for the support of the dependent child and not for the benefit of ineligibles, and the fallacy is the same. Rather the State provides the family with what it determines to be the necessary resources, but then the resources belong to the family to utilize as it best sees fit. Absent this element of choice a welfare state would be a police state
 If the State believes that the resources are being misused to the detriment of the child, it has a vast battery of provisions which it may use to protect the child. Initially and primarily there are counseling services for the family. 18 NYCRR 386.1-10. This may range from simple caseworker counseling to specialized psychiatric help. Where a recipient has demonstrated an inability to handle the cash resources provided, restricted payments may be made rather than the normal unrestricted payments. Soc. Services Law 350-a; 18 NYCCR 381.3(a). For instance, if the head of the household wastes money so that rent payments cannot be met, the State may undertake to pay the shelter allowance directly to the landlord. Soc. Services Law 143-b; 18 NYCCR 381.3(c). The overall payments may be made to a person other than the head of household or to an agency on behalf of the eligible child. 18 NYCCR 381.8. A homemaker may be provided in the house for the family. 18 NYCCR 387.2. Intensive family casework services are available, 18 NYCCR 456.1-.7. In extreme cases the children may be removed from the home and placed in foster care. Soc. Services Law 358-a; 18 NYCRR 450.3. And, of course, the whole gamut of procedures relating to neglected children is available to the State. Soc. Service Law 374, 397, 398; Penal Law 260.05, 260.10; Family Court Act 1011-1074.
 
 
 [14]
 If the lodger were receiving welfare funds for which he was ineligible, he could be prosecuted for welfare fraud. Soc. Services Law 145
 
 
 [15]
 Neither the State nor the majority has asserted that the regulation in question in any way safeguards the welfare of the eligible child. Nor does it appear how by reducing the child's benefits, which in one of the cases before us resulted in a notice of evication, the child's welfare would be enhanced
 
 
 [16]
 The State already requires the applicant for welfare to assign certain assets and to utilize all resources for the production of income. See 18 NYCRR 352.15(d), 352.23, 352.25, 352.27, 352.28
 
 
 [17]
 The majority's decision in its own words is premised upon what the majority concludes the New York regulations to 'imply' or to be 'based on,' or their 'objective.' The Appellate Division in Battle v. Lavine, supra, the highest state court to have spoken on the issue, has explicitly rejected the interpretation of the majority here. Whether this court should be bound by the interpretation of state law made by Battle is a question not argued or briefed to us as Battle was decided after argument before this court. Nevertheless, it is clear that the majority decision, based as it is on an interpretation of state law, does not preclude New York courts from reaching an opposite conclusion, as the Battle court did, as to the conformity of the state regulations with the federal statute and regulations